JOSEPH J. NOONAN *vs.* DAVID C. KEMP and E. LOUIS CRAMER, Executors of DAVID KEMP, and others.

*The law of the Domicil as governing the disposition of Personal property.*

A testator residing in Maryland, bequeathed to his daughter residing in Kentucky, certain distributive portions of his personal estate. Before distribution of this estate was made, the daughter died intestate, leaving a husband and two children surviving her. After her death a distribution was made, and upon the question of the proper disposition of her share, it was HELD:

That as Kentucky was the domicil of the wife at the time of her death, the disposition of and succession to her distributive share of her father's personal estate, must be governed by the laws of that State, and that in accordance therewith her husband was entitled to the entire fund.

The disposition, succession to and distribution of personal property, wherever situated, is governed by the laws of the country of the owner's or intestate's domicil at the time of his death.

APPEAL from the Circuit Court for Frederick County, in Equity.

David Kemp, late of Frederick county, in this State, bequeathed to his daughter, Mary Ellen Noonan, then wife of the appellant, and residing with him in the State of Kentucky, certain distributive portions of his personal estate. The testator appointed the appellees, David C. Kemp and E. Louis Cramer, his executors, and died soon after the date of his will. Mrs. Noonan survived her father, and died intestate in the State of Kentucky, leaving the appellant, her husband, and two children surviving her. No distribution of the personal estate was made during her life; after her death a distribution was made, and her proportion thereof amounted to $3,453.35. The bill in this case was filed against the executors of David Kemp, by the appellant, who claimed to be entitled, as surviving husband, to the portion distributed to his wife. The surviving children were made parties defendants. The executors answered the bill, admitting the facts charged therein to be true, and submitted to such decree as the Court might deem just and equitable. It was admitted that by the law of Kentucky, the surviving husband is entitled to the personal estate of his deceased wife. The Court decreed that the husband was entitled only to a life interest in his deceased wife's estate, and ordered an investment thereof by the executors of David Kemp, so that the interest or income of the fund should be paid to the husband during his life, and the principal after his death to the two surviving children.

From this decree the complainant appealed.

The cause was argued before BARTOL, C. J., BRENT, GRASON, MILLER and ROBINSON, J.

*Frederick J. Nelson* and *William M. Merrick*, for the appellant.

The complainant is entitled to take the whole fund, as administrator of his deceased wife, under Article 93, sec. 32 of the Code.   *Hatton vs. Weems,* 12 *Gill & Johnson,* 112.

The legacies under David Kemp's will were vested legacies, and passed at the death of Mrs. Noonan to her husband, as her personal representative.   *Snively vs. Beavans,* 1 *Md.,* 208; *O'Byrne vs. O'Byrne's Admr.,* 9 *Md.,* 512; *Meyer, et al. vs. Eisler, Trustee, et al.,* 29 *Md.,* 28.

The succession to personalty depends on the law of the domicil, and in the absence of a marriage contract, the law of the matrimonial domicil governs as to all the rights of the parties to their present property in that place, and as to all *personal property everywhere.   Newcomer vs. Orem,* 2 *Md.* 297; *Hooper vs. Mayor of Balt.,* 12 *Md.,* 473; *Sill vs. Worswick,* 1 *H. Black. Rep.,* 690; *Story on Conflict of Laws, secs.* 379, 380, *and authorities in note* 3 *to sec.* 380, *also sec.* 187; 2 *Kent's Com.,* 428 *to* 430, *marg.; Ennis, et al. vs. Smith, et al.,* 14 *Howard,* 424; *Harvey vs. Richards,* 1 *Mason C. C.,* 408, 410.

*William J. Ross,* for the appellees.

The bequest being made by a will executed after the adoption of the Code, and vesting since the Code, must be governed by the provisions of the Code.   The question then is, what are the rights of a surviving husband in the *choses in action* of a deceased wife, she dying intestate, leaving children?   The 1st section of Article 45, of the Code of Public Gen. Laws, passed in pursuance of a constitutional mandate, exempts the property of the wife from the debts of the husband.

The second section creates a separate estate in the wife in such property, with power to dispose of the same by will or by a deed executed by her husband and herself; and provides, that in case of her intestacy, leaving issue, the *surviving husband* shall have a life-estate in her real and personal property.

The Article therefore fixes the property in a case like the present, and limits the estate of the husband to an estate for his own life.

It is the legislative settlement of the property of the wife to her separate use, with power of disposal, and in the event of failure to execute the power, restricts the estate of the husband to a life-interest, and by implication vests the residue, after the death of the husband, in the issue of the marriage. The husband, therefore, has a qualified, not an absolute estate.

The estate of the husband, Noonan, and the duty and liability of the executors of Kemp, are analagous to a bequest of a pecuniary legacy to one for life, with remainder over. The principle involved has been decided by this Court. *Miller and Mayhew vs. Williamson,* 5 *Md.,* 235; 2 *Williams on Executors,* 1000, (*marginal.*)

The general rule, that the succession to personalty depends on the law of the domicil, is not inflexible. It is subject to modification:

1st. Wherever the law of the State of the *situs* of the personal property conflicts with the law of the State of the domicil of the party entitled to such property, the law of the former State must prevail.

2d. The policy of the State of the *situs* of the property must prevail over the law of the domicil. And the policy of this State for years past, has been to protect the property of the wife, and to preserve it for her issue, against the improvidence of the husband. *Story on Conflict of Laws,* sec. 28; *Davis vs. Jacquin,* 5 *H. & J.,* 100; *Gardner vs. Lewis,* 7 *Gill,* 395; *Smith, Garnishee of Leister, vs. McAtee,* 27 *Md.,* 438; 2 *Kent's Com.,* 407; *Wilson & Co. vs. Carson & Co.,* 12 *Md.,* 75.

Although personal property has no locality, and as a general rule, attaches itself to the domicil of the owner, yet the positive or customary law of the place of its *situs,* regulates and controls its transmission whenever such positive or customary law conflicts with the law of the domicil.

The Courts of this State, whose aid is invoked by the surviving non-resident husband, must decide in conformity with the statutes of this State, and not according to the law of the domicil.

Robinson, J., delivered the opinion of the Court.

If there be a principle of international law settled beyond dispute, it is that the succession to personalty is governed and regulated by the law of the *domicil*, and in the absence of a marriage contract, the law of the *matrimonial domicil* governs as to all the rights of the parties to their present property in that place, and as to *all personal property wherever it may be situate.*

"It has," says Chancellor Kent, "become a settled principle of international jurisprudence, and one founded in a comprehensive and enlightened sense of public policy and convenience, that the disposition, succession to and distribution of personal property, wherever situated, is governed by the law of the country of the owner's or intestates domicil at the time of his death, and not by the conflicting laws of the various places where the goods happen to be situate." 2 *Kent's Comm.*, 429.

Judge Story says: "Be the origin of the doctrine what it may, it has so general a sanction among all civilized nations, that it may be treated as part of the *jus gentium*. And in *Sill vs. Worswick*, 1 *H. Black.*, 690, the general doctrine is stated with great force and vigor."

"It is a clear proposition," says Lord Loughborough, "not only of the law of England, but of every country in the world, where the law has the least semblance of science, that personal property has no locality. The meaning of that is, not that personal property has no *visible* locality; but that it is subject to that law which governs the person of the owner; both with respect to the disposition of it, and with respect to the transmission of it, either by succession or by the act of the party. It follows the law of the person. If

he dies, it is not the law of the country in which the property is, but the law of the country of which he was a subject, that will regulate the succession." "And this doctrine has been constantly maintained, both in England and America, with unbroken confidence." *Story's Conflict of Laws*, sec. 380.

It is, however, unnecessary to multiply authorities. So early as *De Sobry vs. De Laistre*, 2 *H. & J.*, 191, this Court held "that personal property adheres to the person, and that wherever the person is domiciled the property goes in distribution according to the laws of that country," and so late as *Newcomer vs. Orem*, 2 *Md.*, 297, it was expressly decided that the personal property of the wife in the State of Louisiana was governed by the laws of this State, the place of the matrimonial domicil, and that accordingly the husband was entitled to the wife's *choses in action* subject to the right of survivorship.

The case of *Smith, Garnishee of Leister, vs. McAtee*, 27 *Md.*, 438, was decided upon other principles, not in conflict with this well established and universally recognized doctrine. There, a creditor of the husband attempted to attach a fund dedicated to the *separate use of the wife by a decree of equity*, and it was held that the creditor of the husband seeking a remedy against him in our Court must be governed and regulated by our laws,—in other words, a person suing in this State must, in such a case, take the law as he finds it, "and wherever a remedy is sought it must be administered according to the *lex fori*." *Story on Conflict of Laws*, sec. 571. No allusion was made to the doctrine of succession in cases of intestacy, and it can hardly be supposed that it was intended to overrule the well established law on this subject, and which more than once had been expressly approved of by this Court.

It being admitted that Kentucky was the matrimonial domicil at the time of the death of Mary Ellen Noonan, we are of opinion that disposition of and succession to the distributive share due to her from her father's estate, must be governed by the laws of that State, and not by the provisions

of our Code, and it being further admitted that by the Statute of Kentucky the surviving husband is entitled to the personal estate of his deceased wife, it follows that the decree below must be reversed and the cause remanded in order that a decree may be passed in conformity with this opinion.

*Decree reversed and*
*cause remanded.*

(Decided 15th February, 1871.)