APPEAL TAX COURT OF BALTIMORE CITY *vs.* ELIZABETH PATTERSON.

*Taxation by this State under the Act of 1876, ch. 260, of Public Debts of other States, held by Residents of this State, and Exempted from Taxation by such States—Situs of the Stock, the Domicile of its holder—Declaration of Rights, Art. 15—Action of Assumpsit to enforce a duty imposed by Act of Assembly—Repealing and Enacting Clauses of an Act of Assembly—System of Revenue and Taxation—Construction of the Acts of 1874, ch. 483, 1876, ch. 260, and 1878, ch. 413.*

The power of taxation may be exercised by this State upon stocks, bonds or other certificates of public debt issued by other sovereign States, or by municipalities created by them, which are exempted by the States issuing them, and owned by citizens or residents of this State.

The contract of exemption is limited to the State granting it, as its authority is only co-extensive with its territory, and cannot operate on the rights and powers of other States.

The *situs* of the stock being that of the domicile of its holder, his property is subject to the sovereign powers of the State wherein he resides. Whether this power should be exercised or not, is a legislative, not a judicial question.

The owner being under the Constitutional obligation, bound to contribute to the support of the government, according to his actual worth in real or personal property, he cannot complain, if he is fairly taxed by the Legislature of his domicile. Taxation and representation are correlative rights. Whenever a citizen or resident is represented actually or constructively, he is presumed to owe obedience to the laws of the State, which protects him. They secure every right which he enjoys, and the State is entitled to all the means necessary to maintain them.

Wherever a duty is imposed by Act of Assembly, and no other mode of enforcing it is prescribed, the action of *assumpsit* will lie, on the principle, that where the law gives a claim to one against another, it raises an implied *assumpsit* on the legal obligation to pay.

The Act of 1874, ch. 483, is entitled: "An Act to repeal Art. 81, Code of Public General Laws of the State of Maryland, entitled 'Revenue and Taxes,' and to re-enact the same with amendments." Sec. 1 enacts: "That Art. 81, of the Code of Public General Laws, entitled 'Revenue and Taxes,' be, and the same is hereby repealed; provided that said repeal shall not affect or impair any right vested or acquired, and existing at the time of said repeal under said Article, or any section thereof, nor shall it impair, discharge or release any contract, obligation, duty, liability or penalty whatsoever now existing; but that all suits and actions pending, and all prosecutions for penalties, crimes or misdemeanors under said Article, including all civil and criminal proceedings whatsoever, shall be prosecuted and proceeded with to final determination, and judgment entered therein, as if said Article had not been repealed." HELD:

1st. That this proviso is incorporated with the Article, as a standing clause preceding and qualifying all subsequent sections as a cardinal principle in the system of revenue and taxes, and the basis of the legislation on that subject.

2nd. That the doctrine of the text books, that the effect of repealing a statute is to obliterate it as completely from the records of the Parliament as if it had never passed, does not apply to our mode of legislation. In Maryland, the repealing and enacting part of the Act take effect at the same instant of time, and the enacting part substantially re-enacts the provisions of the first statute.

3rd. That the system of revenue and taxation for State and municipal purposes, being a continuous and permanent system necessary to meet the ever accruing wants and exigencies of the communities for

which they are levied and assessed, it cannot be presumed that there was a moment of time in which any citizen was absolved from the obligation of contributing to the public burdens in proportion to his ability to pay. The laws providing for the assessment and collection of these taxes, have, therefore, never been suspended or repealed, and the duties and obligations they imposed, have not been discharged or released, and all proceedings instituted under the Act of 1876. ch. 260, are still in force and effect, the Act of 1878, ch. 413, in no wise altering or repealing them; the latter Act being prospective in its operation.

APPEAL from the Baltimore City Court.

This is an appeal from a *pro forma* order of the Court below, passed on the 26th June, 1878, on the petition of the appellee, in proceedings under the Act of 1876, ch. 260, sec. 28, whereby the Appeal Tax Court was directed to strike from the list of property valued and assessed to the appellee as not subject to taxation, certain bonds and certificates of indebtedness of the States of New York, Pennsylvania and Ohio, and of the Cities of New York and Philadelphia, and of the County of New York, due to the appellee, a resident of this State. From this order the Appeal Tax Court appealed. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., BOWIE, ALVEY and ROBINSON, J.

*A. Leo Knott, State's Attorney for Baltimore City,* and *Charles J. M. Gwinn, Attorney General,* for the appellant.

Are bonds or obligations of other States, and of municipal corporations incorporated by other States, commonly called the stock or debt of such States and municipalities, subject to valuation and assessment by this State under the Act of 1876, ch. 260, when the holder of such bonds or obligations resides in the City of Baltimore?

The basis of our system of State taxation is the fundamental rule that every person in the State, or person hold-

ing property therein, ought to contribute his proportion of public taxes for the support of the government, according to his actual worth in real and personal property. *Declaration of Rights, Art.* 15, *of* 1867.

The principle, which must be deduced from this article, is, that immovable properties within this State are subject to valuation and assessment in this State, whether such property be owned by residents or non-residents; and that movable properties, owned by residents of this State, follow the persons of their respective owners, and must be accounted part of the property by which the actual worth of such owners shall be measured.

This principle is a rule of public law: 2 *Domat's Civil Law, by Strahan,* (2nd Ed.) 330; *Story Confl. Laws,* (3rd Ed.,) secs. 379, 380, 381; *Sill vs. Worswick,* 1 *H. Black.,* 690; *Freke vs. Lord Carberry, Law Rep.,* 16 *Eq. Cas.,* 466, Lord SELBOURNE.

The words "movable properties," used by the continental writers, are now recognized as the fitting term by which to distinguish those properties which follow the person, and are, therefore, "*movable*" from those properties, which though treated by a local law as personal estate, are yet, as matter of fact, *immovable,* because, being an interest in lands, "they savour of the realty." *Freke vs. Lord Carberry, Law Rep.,* 16 *Eq. Cas.,* 466, 467.

It certainly cannot be reasonably doubted that State and municipal bonds, bearing interest, belong to the class of movable properties. "States and cities when they borrow money and contract to repay it with interest, are not acting as sovereignties. They come down to the level of ordinary individuals. Their contracts have the same meaning as that of similar contracts between private persons." *Murray vs. Charleston,* 96 *U. S.,* 445. See also *U. S. Bank vs. Planters' Bank,* 9 *Wheat.,* 907. Their obligations are simply evidences of debt, due from such States and cities to the holders of such obligations. Such bonds

are, undoubtedly, property in the hands of those who hold and own them: *State Tax on Foreign-held Bonds*, 15 *Wall.*, 320. If they are property in the hands of those who hold and own them, they have, as property, no other *situs* than the residence of such holders and owners. *State Tax on Foreign-held Bonds*, 15 *Wall.*, 323.

Such securities show the right of the persons owning them to demand payment of the interest thereon, as it may accrue and become payable, and of the principal, when it shall become due according to the terms of the respective contracts: *Williams on Personal Property*, (4*th Am. Ed.*) 4. These rights are properties belonging to the owners of such securities. *State Tax on Foreign-held Bonds*, 15 *Wall.*, 320; *Murray vs. Charleston*, 96 *U. S.*, 445. They are properties, having a value in the market while the interest is maturing and before the debts are due. They are properties, which, because they consist of the right of their respective owners to demand such interest and principal, as they may respectively become due, are personal to such owners; and have, as such rights, no taxable *situs*, except the residences of their respective owners; *Cooley on Taxation*, 65; *Burroughs on Taxation*, secs. 41, 134, 432; *Latrobe vs. Mayor and City Council of Baltimore*, 19 *Md.*, 22; *Mayor and City Council of Baltimore vs. Sterling and Ridgely*, 29 *Md.*, 49; *Champaign County Bank vs. Smith*, 7 *Ohio*, 52, 54; *Hall vs. County Commissioners of Middlesex*, 10 *Allen*, 102; *Webb vs. Burlington*, 28 *Vt.*, 198; *Kirkland vs. Hotchkiss*, 42 *Conn.*, 426, 435.

It does not matter that by the terms of the contracts the owner of such securities is obliged to demand payment in a State other than that in which he may reside. It does not matter that he is required, by the terms of the contracts, to assign these securities in a particular manner, or that the registry of such assignment is required to be made or kept in a particular place. Such conditions do not alter the *situs* of the right of property, or separate

OCTOBER TERM, 1878.          359

Appeal Tax Court of Balt. City *vs.* Patterson.

such properties from the person of the owner of them. They are only precautions, intended for the greater safety of the debtor; *Black vs. Zacharie,* 3 *Howard,* 513; *Farmers' Bank of Maryland vs. Iglehart,* 6 *Gill,* 56; *Baltimore City Passenger Railroad Co. vs. Sewell,* 35 *Md.,* 252, 253.

Such bonds may be securities, which are of record as the property of the owner thereof, in the proper offices of the States and corporations by which such bonds were executed; but the title to the bonds does not depend upon the register only. Each of such owners has actual possession of his bonds. Each of said owners is competent to sell, bequeath, or give them away as part of his estate. They are not subject, in any wise, to the taxing jurisdiction of the States under whose authority they were issued, as the property of such owners; because such owners are not within the jurisdiction of those States: *Murray vs. Charleston,* 96 *U. S.,* 445. They are taxable only under the laws of the State in which their owner may reside.

It is true that the Supreme Court, in the case of *State Tax on Foreign-held Bonds,* 15 *Wall.,* 323, 324, said: "That the actual *situs* of personal property, which has a visible and tangible existence, and not the domicile of its owner, will, in many cases, determine the State in which it may be taxed. The same thing is true of public securities consisting of State bonds, and bonds of municipal bodies, and circulating notes of banking institutions; the former, by general usage, have acquired the character of, and are treated as, property *in the place where they are found,* though removed from the domicile of the owner; the latter are treated and pass as money wherever they are. But other personal property, consisting of bonds, mortgages, and debts generally, has no *situs* independent of the domicile of the owner."

We do not understand what is meant by the words that State bonds, and bonds of municipal bodies, by general usage, "have acquired the character of, and are treated

as property, in the place *where they are found*, though removed from the domicile of the owner."

It will be observed that the Supreme Court does not say that such bonds are not to be treated as property, at the domicile of their owner, *when they are found at such domicile.* It certainly did not mean to say that they could be treated as property *only* in the State or municipality by which such bonds were issued; for while in *Murray vs. Charleston*, 96 *U. S.*, 445, it decided that the promise of a State or municipality *was* property, it held on page 440, *that a non-resident holder of such State or municipal promises was not a holder of property within such State or city.* If such non-resident holder of State or city bonds is not a holder of property in the State or city issuing such bonds, he must certainly be accounted the holder of such property at his domicile in the State in which he resides. And, as the Supreme Court, in its opinion in *Murray vs. Charleston, supra,* expressly limits the taxing power of a State or city over debts due by such State or city, *to creditors within their respective jurisdictions,* it must certainly be understood to have meant that the taxing power of other States, and of municipalities in other States, extended to such properties, when owned by creditors residing within *their* respective jurisdictions. In such cases the property is found at the domiciles of the owners of the particular properties.

As a question of strict law, it is immaterial whether bonds, issued by another State, or by a municipality incorporated by another State, and owned by a resident of this State, were or were not exempted from taxation by the State which authorized the issue of such bonds. Such exemption can have no extra-territorial operation, except by general usage, or by a comity, which has attained the force of general usage.

There is, of course, no need of any argument to show that the bonds of other States, or of municipal or other

corporations incorporated by other States, owned by residents of this State, are not exempted from taxation by this State, because such bonds are not taxed by the States which authorize their issue, when owned by residents of such States. Each State is free, in the absence of a constitutional provision to the contrary, to exempt from taxation any class of property belonging to residents of such State to which it may see proper to grant such immunity. The power thus exercised can never operate beyond the jurisdiction of the State exercising it. No State can protect from taxation, property within the jurisdiction of another State, owned by a resident of such other State.

*Charles J. Bonaparte* and *I. Nevett Steele,* for the appellee.

Is the registered public debt of one State owned by a non-resident, taxable by the State of the owner's residence?

Whatever may be the rule in other States, the law is perfectly settled in Maryland, that the same property cannot be taxed twice by the same or a co-ordinate authority. *The Tax Cases,* 12 *G. & J.,* 117; *Gordon's Ex'rs vs. Mayor. &c., Balto.,* 5 *Gill,* 231; *Mayor, &c., of Balto. vs. Balto. & O. R. R. Co.,* 6 *Gill,* 288; *Mayor, &c., of Balto. vs. Stirling and Ridgely,* 29 *Md.,* 49.

Nor does it affect this position, (except to strengthen its equity,) that the two authorities may be foreign to each other. *State of Mo. vs. St. Louis Co. Ct.,* 47 *Mo.,* 594, 600; *Railroad Co. vs. Jackson,* 7 *Wall.,* 262, 268.

Therefore the right of taxation by one State excludes that of another; *i. e.,* if the State of Maryland can tax the stock of other States held by her residents, she cannot tax her own stock held by non-residents. We extend the basis of taxation in one way while we curtail it in another.

Moreover, the right of taxation depends upon the *situs* of the property, not that of its owner. *State vs. Phil.,*

*Wilm. & Balto. R. R. Co.*, 45 *Md.*, 361, 377; *The Tax Cases*, 12 *G. & J.*, 124; 51 *Barb.*, 356.

And the question of this *situs* is wholly free from the usual presumption against the exemptions from taxation; for it is not whether the State has relinquished its power to tax property of this description, but whether it ever possessed such a power. *Delaware R. R. Tax Case*, 18 *Wall.*, 229.

Since then property can have only one *situs* for taxation, we need only determine: What is the *situs* for taxation of the property in question in this case? The general rule *mobilia sequuntur personam*, relied on by the appellant, is far from being of universal application and has been qualified by especially numerous exceptions in cases of taxation. *Hoyt vs. the Comm'rs of Taxes*, 23 *N. Y.*, 224; *City of Albany vs. Meekin*, 3 *Ind.*, 481; *Catlin vs. Hull*, 21 *Vt.*, 152; *The People vs. The Home Ins. Co.*, 29 *Cal.*, 533; *Faxton vs. McCosh*, 12 *Iowa*, 527; *Wilkey vs. City of Pekin*, 19 *Ills.*, 160; *Jenkins vs. Charleston*, 5 *Rich.*, (*N. S.*) (*S. C.*) 393; 51 *Barb.*, 352.

Indeed, being, after all, only a legal fiction intended to promote justice, it yields whenever justice requires another rule to be adopted. 1 *Kent's Comm.*, 406; *Story's Conf. of Laws, secs.* 383, 550.

If then we find that legal principle, (*a*) substantial equity, (*b*) reasonable analogy, (*c*) public policy, (*d*) comity, (*e*) or constitutional obligations, (*f*) require that this property should have a *situs* for this purpose different from the residence of its owner, the general rule will not stand in our way.

(*a.*) Taxation is an attribute of sovereignty; it extends to everything which exists by the State's authority or is introduced by its permission. *McCulloch vs. Maryland*, 4 *Wheat.*, 316; *Howell vs. The State*, 3 *Gill*, 14; *United States vs. Rice*, 4 *Wheat.*, 246.

But over nothing is a State more completely sovereign, nothing exists more evidently by its own authority or is

introduced more completely by its own permission, than its own debt, and that of its municipal corporations. Nothing can be more entirely removed from the control of another State "upon the soundest principles" then such property is "exempt from taxation" by the foreign State. *Howell vs. The State, supra.*

(*b.*) Taxation is the equivalent of protection; unless some return is made by the government for the property taken, exacting it "is none the less robbery because it is done under the forms of law, and called taxation." *Loan Association vs. Topeka*, 20 *Wall.*, 655; *Alexander & Wilson vs. M. & C. C. of Balto.*, 5 *Gill*, 383; *Moale vs. M. & C. C. of Balto.*, 5 *Md.*, 314; *Cooley on Taxation*, 42; 51 *Barb.*, 356; 35 *N. Y.*, 440.

But what protection does or can one State of the Union afford to the interests of its citizens in the public debt of another State? Where is the equivalent for the burden? The value, the security, the very existence of the property depend upon the political well-being of the debtor State; there and there only can the expenditure of public money be called a benefit to the creditor.

(*c.*) By the Act of 1876, as well as the universally admitted principles of taxation, real property in a foreign State owned by a resident of Maryland, is not taxed here. Yet only a purely arbitrary distinction can be drawn, for the present purpose, between a lot of ground in Pennsylvania and a share in the registered Pennsylvania State debt. Either may be owned by a non-resident; the evidence of ownership, (the deed as well as the certificate,) may in either case be in Maryland; in both cases any transfer of ownership must be made in Pennsylvania, *and according to the forms of Pennsylvania law;* the interest no less than the rent is payable there, and there only; only by Pennsylvania could the house itself be seized for non-payment of taxes; but it would be equally possible for that State, and equally impossible for any other to levy

364        MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* Patterson.

under similar circumstances upon the stock.  It was no doubt from the force of these analogies that the public debt of England was at one time held to be real property.  *In re Ewin,* 1 *Cr. & Jer.,* 151, 155; *Story's Conf.,* sec. 383.

And although this rule has been changed for general purposes, it is submitted that reason and justice demand its application still for those of taxation.

(*d.*) As there can be only one *situs* for taxation, (*State of Mo. vs. St. Louis Co. Ct., supra,*) we have to consider whether the public interest will be the better promoted by taxing our public debt held by non-residents, or the interests of our residents in foreign public debts.

(*e.*) Comity requires the recognition by one State of the right of another to tax exclusively the latter's public debt; for, as a wrongful assessment in one jurisdiction is no bar to a rightful one in another, (47 *Mo.,* 600, *supra,*) the taxation in the State issuing the bonds must from this point of view be *rightful.*  It is submitted, however, that the taxation *in fact* of the bonds, by the foreign jurisdiction, cannot possibly furnish a criterion of the wrongfulness of taxation here, since it is a matter wholly in the discretion of the foreign Legislature.  Comity, then, forbids the taxing of the stocks here involved.  Such a prohibition would seem, indeed, to be demanded by the *spirit,* if not by the *letter,* of Article IV, sections 1 and 2, of the Constitution of the United States.

(*f.*) The decisions of the Supreme Court of the United States have established: That the States cannot tax agencies of federal government, nor the United States' agencies of State government.  *McCulloch vs. Maryland, supra.*  *Dobbins vs. The Comm'rs of Erie Co.,* 16 *Pet.,* 435. *United States vs. Railroad Co.,* 17 *Wall.,* 322, 328.  That public debts are such agencies of government.  *Weston vs. City of Charleston,* 2 *Pet.,* 449.  That this incapacity to tax arises not from any express prohibition of the Constitution, but from the tendency of such taxation to defeat its general intent and purpose.  4 *Wheat.,* 426–437.  That the

test of the taxing power is the State's power to *destroy* the thing taxed; *i. e.*, if the State of·Maryland cannot *prohibit* her citizens from loaning their money to her sister States *directly*, she ·cannot do it *indirectly* by taxing such loans in their hands.   2 *Pet.*, 467, *supra.   Ward vs. Maryland*, 12 *Wall.*, 418.

The effect of the Act of 1878, ch. 413, upon ,that of 1876, ch. 260, so far as State bonds exempted from taxation by the law of the State of issue authorizing their creation, were concerned, was "to obliterate it as completely from the records of the Legislature as if it had never been passed; and it must be considered as a law that never existed, except for the purpose of those actions or suits which were commenced, prosecuted, *and concluded* whilst it was an existing law."   *Baugher vs. Nelson*, 9 *Gill*, 299. *Reynolds vs. Furlong*, 10 *Md.*, 318.   *Mayor, &c. vs. State*, 15 *Md.*, 376, 462.   *In re Oliver*, 17 *Wis.*, 681.   *Atwell vs. Grant*, 11 *Md.*, 101.   .*State, use, &c. vs. Norwood*, 12 *Md.*, 195. *Price vs. Nesbitt*, 29 *Md.*, 263.   *Wade vs. St. Mary's Ind. School*, 43 *Md.*, 178.   *Dashiell vs. Mayor, &c., Balt.*, 45 *Md.*, 615, 622.

Are stocks of the kind here involved "movable proper- ties," for the purpose of taxation ?   The *things* here taxed are *debts* due the petitioner, not *bonds* or *certificates* evi- dencing such debts; the two are distinguishable.   *Pelham vs. Rose*, 9 *Wall.*, 103, 106.   *Pelham vs. Way*, 15 *Wall.*, 196, 202.   *Miller vs. The United States*, 11 *Wall.*, 268.   *Brown vs. Kennedy*, 15 *Wall.*, 591, 599.   *Murray vs. Charleston*, 6 *Otto*, 440.   *Green vs. Van Buskirk*, 7 *Wall.*, 139.   *Wil- liams' Personal Prop.*, 4 *and* 5.

Bowie, J., delivered the opinion of the Court.

The principal question raised by the records in the class of appeals now before us is, whether the public debt of one state, owned by a citizen, or resident of another, is taxable by the State, in which the owner resides.   The

importance of the question in a financial point of view, to the State, and its residents, can scarcely be magnified.

Although the counsel for the parties interested have exhibited the greatest industry and research, in presenting every case that could throw light on the subject, it appears the question is yet "*res integra.*"

Analogous cases, but none directly in point, have been cited. In some the question has been adverted to, but avoided as not raised by the record. There seems to have been a manifest reluctance to anticipate a question so difficult of solution.

The power of taxation (it is said) is limited only by its necessities, or such constitutional bounds as are imposed by the compact of government.

It is conceded on all hands to be a legislative power, with the wisdom or policy of which the judicial authority has nothing to do.

It operates upon all tangible property, real or personal, found within the territory in which the owner resides, and all intangible property, which follows the person of the owner.

The inquiry in the present instance is, how far it may be exercised upon stocks, bonds, or other certificates of public debt, issued by other sovereign States (or municipalities created by them,) which are exempted by the States issuing them, and owned by citizens of this State.

The most recent text writers, announcing the result of the latest decisions on this subject, declare "that protection of the government, being the consideration for which taxes are demanded, all parties who receive, or are entitled to that protection, may be called upon to render the equivalent. The protection may be either to the rights of person, or to the rights in property, and taxes may consequently be imposed when either person or property that is within the jurisdiction. But a personal tax cannot be assessed against a non-resident, neither can the property of

OCTOBER TERM, 1878.            367

Appeal Tax Court of Balt. City *vs.* Patterson.

a non-resident be taxed unless it has an actual *situs* within the State, so as to be under the protection of its laws. The mere right of a foreign creditor to receive from his debtor within the State the payment of his demand, cannot be subjected to taxation. It is a right that is personal to the creditor *where he resides,* and the residence or place of business of his debtor *is immaterial."*

" The power of taxation, however vast in its character, and searching in its extent, is necessarily limited to subjects within the jurisdiction of the State. These subjects are persons, property and business." *Cooley on Taxation,* 14, 15 ; 15 *Wall.,* 300, 319 ; 11 *Allen,* 265.

In a subsequent chapter, treating of limitations upon the taxing power, the learned writer, referring to the above as established propositions, says:

"It has already been shown that persons and property not within the territorial limits of the State cannot be taxed. In such a case the State affords no protection, and there is nothing for which taxation can be an equivalent, but where a person is resident within the State, his personal property in contemplation of law accompanies him, and he may be required to pay taxes upon it, wherever it is situate, while the real estate of the non-resident is always taxable where it is."

"It is competent also for any State to provide that tangible personal property situate within it, may be taxed there."

The 15th Article of our Declaration of Rights, announcing the principles upon which the levying of taxes should be based, is apparently a modification of one of the four maxims with regard to taxes in general, laid down by Adam Smith, in his work on the nature and causes of *The Wealth of Nations, Part* 2, *Tit. Taxes, vol.* 4, *p.* 164. That distinguished author's first maxim is : " The subjects of every State ought to contribute towards the support of the government, as nearly as possible in proportion to their

respective abilities; that is, in proportion to the revenue which they respectively enjoy under the protection of the State."

The language of our organic law is, "that every person in the State *or* holding property therein, ought to contribute his proportion of public taxes for the support of government, according to his actual worth in real or personal property." *Decl. of Rights, Art.* 15.

No reference is expressly made to the *situs* of the property as the ground of obligation, where the tax is laid on the person; the elements of the duty are, the ability of the citizen to pay, and the protection he enjoys under the government.

By the universal law of all civilized nations property in action had its *habitat* at the domicile of the owner; it could not exist separately from the owner; as an obligation, or duty owing to him, it must follow his person.

The State which protected him, or of which he was a citizen, must eventually protect his right to such claims, if the right was assailed or denied.

The early decisions of this State announced two apparently conflicting propositions on the subject of the power to tax choses in action.

In the Tax Cases, 12 *G. & J.*, 118, it is held, that "non-residents of the State are liable to the tax in respect of *stock* held in the banks of this State, as well as residents here."

2ndly. That a mortgage in the hands of the mortgagee is liable to be taxed as an item of his property, etc., at the domicile of the creditor.

The first, seeming to lay the tax on the debtor institution; the second, laying the tax on the creditor.

The principle on which the first proposition rests, must be, that the bank, being incorporated by the State, it is competent for the State to impose a tax upon its stock, wherever, and by whomsoever held; because the cor-

poration is the creature of the State, and exists by its permission.

No opinion was filed in the cases just cited, but in *Howell vs. The State,* 3 *Gill,* 14, this Court entered into the theory of taxation, declaring it was an incident of sovereignty and co-extensive with that to which it is incident. It said: "All subjects over which the sovereign power of the State extends, are objects of taxation; but those over which it does not extend, are, upon the soundest principles, exempt from taxation. The sovereignty of a State extends to everything which exists by its authority, or is introduced by its permission; but it does not extend to those means which are employed by Congress to carry into execution powers conferred on that body by the people of the United States."

"The power of taxation extends to all the people of the government, and embraces *everything which may be fairly considered as constituting a part of the mass of the property of the State.*"

These propositions, which have since become axioms, were, it is believed, the result of very elaborate discussions as to the extent of the power of taxation, granted to the General Government, by the Federal Constitution, and were laid down by the Supreme Court of the United States from time to time, as the power of the States, and the Federal Government, were brought in question. *See McCulloch vs. The State of Md.,* 4 *Wheaton,* 316.

The principles on which they are founded are derived mainly from the law of nations, as applied to the anomalous relation of the States to the United States.

They have been adopted and recognized since as elementary law, in all the text-books on taxation, and are regarded by the Courts as safe guides in all questions of jurisdiction between the several States.

This Court recognized and re-affirmed the principles, which govern the imposition of taxes on debts or securi-

370          MARYLAND REPORTS.

          Appeal Tax Court of Balt. City *vs.* Patterson.

ties within the State, in the case of *Latrobe, Trustee vs.
The Mayor, &c.,* 19 *Md.,* 18. The subject of taxation
was a mortgage or mortgages on real estate lying in the
City of Baltimore, to secure debts due to the appellant as
trustee.

The appellant resided in Howard County, the *cestui que
trusts* in Baltimore City.

The appellee assessed the mortgages in the city, accord-
to the rate of taxation imposed there.

The question was whether the mortgage was liable to
taxation where the trustee resided, or where the property
mortgaged was located and the *cestui que trusts* resided.
It was contended on behalf of the trustee, that the legal
estate in the debt vested in him, and the universal rule as
to personal property was, that it followed the domicile of
the owner; that he alone had the right to receive, to sue,
and recover judgment, if not paid, and to release, if paid.

On the other hand, the counsel for the city contended,
the *cestui que trusts* were the owners in the legal sense.

This Court held: that the thirteenth Article of the Bill
of Rights (now 15th) declaring that every person holding
property in this State, ought to contribute his proportion
of public taxes, according to his actual worth in real or
personal property, meant a legal obligation to contribute
taxes, and such obligation could only be imposed on the
person holding the legal estate; and the Acts of Assem-
bly, requiring all property owned by persons residents of
this State, and not permanently located elsewhere within
the State, to be valued to the owner within the county,
district, or city wherein he may reside, were gratified by
assessing such property to the trustee, at the place of
his residence. To ascertain the location of the property
for which the taxes claimed were assessed, they held
" upon the principle that the possession of personalty fol-
lows the person owning the legal title, that the mortgages,
so far as they could be made the basis of assessment, were
beyond the jurisdiction of the appellee."

The assessment, in such cases, is made upon the amount of the mortgage debt, and not upon the value of the property mortgaged to secure it. As the basis of the assessment is the amount of the debtor's obligation to the creditor, the recording of the mortgage in another county, or district, than that of the creditor's residence, collaterally securing its satisfaction, cannot have the effect of locating the debt where the mortgage is recorded.

The principle here applied to counties and cities within our own State, has been long established between independent States.

"It is a clear proposition (said Lord LOUGHBOROUGH) not only of the Law of England, but of every country in the world where law has the semblance of science, that personal property has no locality. The meaning of that is, not that personal property has no visible locality, but that it is subject to that law which governs the person of the owner, both with respect to the disposition of it, and with respect to the transmission of it either by succession or by act of the party; it follows the law of the person. The owner in any country may dispose of his personal property. If he dies, it is not the law of the country in which the property is, but the law of the country of which he was the subject, that will regulate the succession." *Sill vs. Worswick,* 1 *H. Blac.,* 690; *Bain vs. Whitehaven and Furness Junction R. C.,* 3. *H. L. Cases,* 19.

Judge STORY declares, "*mobilia sequuntur personam*" is the maxim of our own, as of the Roman law. The personal estate of a testator accompanies him wherever he may reside and become domiciled, so that he acquires the right of disposing of and dealing with it according to the law of his domicile. *Story's Conflict of Laws,* (3rd Ed.,) 638, 639. *Bremer vs. Freeman, (Priv. Council, May,* 1857,) 3 *Jur. N. S.,* 202. *Anderson vs. Lanersville,* 9 *Moore, P. C.,* 325.

The cases referred to as exceptions to this universal rule, are rather modifications of it, in some particulars,

than exceptions. Although the mode of alienation may be prescribed by the "*lex loci*," yet the right of the owner to dispose of the thing in action is not questioned.

The exceptions, such as public stocks or funds, which can only be legally transferred according to the local law, may still be so disposed of under the law of the domicile, as to give the purchaser a right of action to compel the transfer according to the "*lex rei sitæ*." *Story's Conflict of Laws, sec.* 383, *note* 2 ; 2 *Kent Com., Lect.* 45, *p.* 145, 146, 3*rd Ed.*

There is no principle of public law that prevents a State from taxing such stocks where the owner resides, unless the exemption of them from taxation, by the State which issues them, distinguishes them from other choses in action.

It is a fundamental principle, "that the laws of one country can have no intrinsic force, '*proprio vigore*,' except within the territorial limits and jurisdiction of that country." (*Story's Conflict, sec.* 7.) "Whatever extra territorial force they are to have is the result, not of any original power to extend them abroad, but of that respect, which from motives of policy other nations are disposed to yield to them." (*Ibid.*) That no State can pass any law impairing the obligation of contracts, is a cardinal maxim of constitutional law.

The application of this rule to the acts of a State, violating its own contracts, grants or charters, as the charters of institutions previously incorporated by the State; or, to the exemption of land from taxes within their own borders, is too familiar to require more than a reference to a few leading cases,—*vide Fletcher vs. Peck*, 6 *Cranch*, 87; *New Jer. vs. Wilson*, 7 *Cr.*, 164; *Terrett vs. Taylor*, 9 *Cr.*, 43; *Dartmouth College vs. Woodward*, 4 *Wheat.*, 518.

The inquiry is: Does it restrain or prohibit the imposition of taxes by a State upon the property of its citizens or residents invested in the stocks of another State, exempted by the law of that State from taxation?

It is too clear for argument, upon principle, as well as authority, that the State exempting such stock could not impose such a tax upon its holders without violating or impairing the obligation of its contract. *Murray vs. Charleston*, 95 *U. S.*, 445.

In the case last cited, the Supreme Court of the United States declined determining the question now presented, because it was not necessarily involved in that case. Here the question arises *in limine*, and must be disposed of. The inhibition of the Federal Constitution, as interpreted in other cases, refers to the obligation of the contract between the State and its grantee or obligee, and not between the obligee and third parties, in whose behalf rights might supervene. The effect of Acts of Limitation, or insolvency, or laws repealing former laws in the nature of grants, or conferring vested rights, are examples coming within the letter or spirit of the prohibitory clause.

The exercise of the power to tax property, or rights in action resting in such contracts, does not in any sense impair the contract, but rather enforces it, by asserting rights incidental and collateral to them.

The contract of exemption is, by its terms, limited to the State granting it, as its authority is only co-extensive with its territory and cannot "*proprio vigore*" operate on the rights and powers of other States.

The *situs* of the stock being that of the domicile of its holder, his property or "*jus disponendi*," according to the law of nations, is subject to the sovereign powers of the State wherein he resides.

Whether this power should be exercised or not, is a legislative, not a judicial question.

The owner, being according to the constitutional obligation bound to contribute to the support of government in proportion to his worth in real or personal estate, cannot complain, if he is fairly taxed according to his ability by the Legislature of his domicile.

374 MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* Patterson.

· Taxation and representation are co-relative rights. Wherever a citizen or resident is represented actually or constructively, he is presumed to owe obedience to the laws of the State which protects him. They secure every right which he enjoys, and the State is entitled to all the means necessary to maintain them.

"No nation can be justly required to yield up its own fundamental policy and institutions in favor of those of another nation." *Story Con. Laws, ch.* 2, *sec.* 25.

"A nation is not under any obligation to recognize rights, contracts or acts, which are to its own prejudice, or in opposition to its own settled policy." *Story Con.*, *p.* 97, *sec.* 70; 1 *Burge Com. on Col. and For. Law,* *p.* 1, *ch.* 3, *sec.* 3, *p.* 129 *to* 134.

The prejudicial consequences of allowing citizens of this State the benefit of exemptions from taxation, granted by other States, are too obvious to need illustration. The tendency of capital to seek investment where it will be free from all contribution to public burdens, is exemplified by instances too numerous to be particularized. No principle of comity can be invoked to sustain claims which are contrary to the organic articles of our State Constitution, and destructive of the means of preserving the public peace and public faith.

The next material question is, the effect of the Act of 1878, ch. 413, upon the assessments made in pursuance and by virtue of the Act of 1876, ch. 260.

The professed object of the Act of 1878 was to amend the *second sub-section* of the Act of 1874, ch. 483, as the said *second sub-section* was amended by the first and seventeenth sections of the Act of 1876, ch. 260, and to re-enact the same in a new and amended form; and also to amend the third sub-section of the Act of 1874, ch. 483, as amended by the Act of 1876, ch. 340, and to re-enact the same in a new and amended form.

It did not propose to alter, change or repeal the Act of 1874, ch. 483, in any other respect than those specified.

The Act of 1874 constituted a *standing Article* of the Code of Public General Laws, and consisted of sections and sub-sections; it is entitled:

"An Act to repeal Article eighty-one of the Code of Public General Laws of the State of Maryland, entitled 'Revenue and Taxes,' and *to re-enact the same with amendments."*

Section 1 enacts: "That Article eighty-one of the Code of Public General Laws, entitled 'Revenue and Taxes,' be and the same is hereby repealed; provided, that said repeal shall not affect or impair any right vested or acquired and existing at the time of said repeal under said Article, or any section thereof; nor shall it impair, discharge or release any contract, obligation, duty, liability, or penalty, whatsoever now existing; but that *all suits and actions pending,* and all prosecutions for penalties, crimes, or misdemeanors, under said Article, including all *civil* and criminal proceedings whatsoever, shall be prosecuted and proceeded with to final determination, and judgment entered therein as if said Article had not been repealed."

This proviso is incorporated with the Article as a standing clause, preceding and qualifying all subsequent sections, as a cardinal principle in the system of Revenue and Taxes.

It is nowhere referred to, or repealed in the subsequent Acts, which amends the Article, and must be regarded as the basis of the legislation on that subject.

The question as to the operation of repealing and re-enacting laws, under the provisions of our State Constitution, Art. 3, sec. 29, which requires the General Assembly in amending any Article or section of the Code of Laws of this State, to enact the same, as the said Article or section would read when amended, was considered by this court, in a very analogous case, *Dashiell vs. The Mayor, &c.,* 45 *Md.,* 622, where it was held that the doctrine of the text-books, "that the effect of repealing a statute is to obliterate it as

376        MARYLAND REPORTS.

Appeal Tax Court of Balt. City *vs.* Patterson.

completely from the records of the Parliament as if it had never passed," etc., does not apply to our mode of legislation, "that the repealing and enacting part of the Act, take effect at the same instant of time," and the enacting part substantially re-enacts the provisions of the first statute; for which position, it was said, there is high authority, referring to *Fullerton vs. Spring*, 3 *Wis.*, 667; *Alexander vs. State*, 9 *Ind.*, 337; *Knoup vs. The Piqua Bank*, 1 *Ohio*, 603.

In the case of Dashiell, the action was *assumpsit*; to recover taxes assessed for improvements, under an ordinance which was afterward rescinded, and another substituted giving another form of remedy.

The tax was local and temporary, yet this Court referred to the general principle that wherever a duty was imposed by Act of Assembly, and no other mode of enforcing it was prescribed, the action of *assumpsit* will lie, on the principle, "that where the law gives a claim to one against another, it raises an implied *assumpsit* on the legal obligation to pay."

The system of Revenue and Taxation for State and municipal purposes, being a continuous and permanent system, necessary to meet the ever accruing wants and exigencies of the communities for which they are levied and assessed, it cannot be presumed that there ever was a moment of time, in which any citizen was absolved from the obligation of contributing to the public burdens in proportion to his ability to pay.

The laws providing for the assessment and collection of these taxes have, therefore, never been suspended or repealed, and the duties and obligations they imposed, have not been discharged or released, and all proceedings instituted under the Act of 1876 are still in full force and effect, the Act of 1878, ch. 413, in nowise altering or repealing them; the latter Act, being prospective in its operation. It results from the principles announced, and

the conclusions drawn from them in the foregoing opinion, that the order appealed from in this case must be reversed; except as to the sum of $10,000 private securities admitted at the argument to be improperly assessed.

