# CIRCUIT COURT NO. 2 OF BALTIMORE CITY.

Filed October 27, 1897.

MARY LOWNDES
VS.
J. WILKINS COOCH, EXECUTOR, ET AL.

*Pollard & Bagby* for plaintiff.

*Barton & Wilmer* and *F. C. Slingluff* for defendants.

STOCKBRIDGE, J.—

Nathan H. Clark, a resident of the State of Delaware, died on the 18th of March, 1892, leaving a last will and testament, by which he devised to his brother, Moses Clark, the dividends to accrue upon the stock held by the testator in the Commercial and Farmers' National Bank of Baltimore, during his life, and thereafter, the said stock was devised to his "friend," Andrew J. Lowndes, of Baltimore." Mr. Lowndes, the devisee after the life estate, died on the 16th day of March, 1892; or two days prior to the death of the testator. The dividends upon the said stock were paid to the life tenant during his life, which has recently terminated. The

690

children of Andrew J. Lowndes assigned all of their interest in this devise to their mother, the widow of the said Andrew J. Lowndes, who is the plaintiff in this case; and this bill is filed by Mrs. Lowndes against the executor of Mr. Clark and the Commercial and Farmers' National Bank to enforce the transfer of the stock devised as aforesaid. To the bill the bank has answered and the defendant has demurred and set up partially by way of answer, but relied on in the demurrer, the fact that there is no statute in the State of Delaware similar to that in our own State to prevent the lapsing of a legacy given by a testator to one dying before him. The cause has come to argument upon this demurrer and the agreement of counsel as to the condition of the Delaware law, and has been argued with exceptional ability by counsel for both parties.

The contention of the plaintiff in support of the bill is twofold: First, while admitting the general principal of law of *mobilia sequuntur personam*, as well as the further principle that the stock in question is personal property, yet it is contended that bank stock is not mobilia, but on the contrary that it is immobilia, and that, therefore, having its situs in the State of Maryland, its disposition is to be governed by the Laws of Maryland, rather than those of the domicile of the testator, and since the laws of Maryland contain express provisions to prevent the lapsing of legacies in a case like the present (Code, Art. 93, Sec. 313), that this devise must be dealt with and construed in accordance with Maryland law, rather than by the law of Delaware, under which, if applicable, the legacy lapsed.

Second. That even though said legacy would lapse under the Delaware law, yet the case presented is not one in which from any principle of comity the Courts of Maryland should be asked to give effect to the Delaware law, rather than our own, as against a citizen of Maryland, and against a supposed policy of this State, as indicated in the legislative enactment to prevent the lapsing of legacies.

I. With regard to the character of the stock in question it is to be noted that the decisions upon the question presented in this branch of the case are not in entire uniformity through-

out the country, and such being the condition of the decisions, it is but natural that these differences should appear in the various text writers. In hardly any State, however, are the decisions upon the question involved fuller or clearer than they are in the State of Maryland, and there is no necessity therefore in passing upon this, to go outside of the adjudications of our own Court of Appeals. The fact that stock in a National Bank, or in any corporation, is personal property, is one which it is not understood is controverted in this case, and if controverted, the fact that it is to be so regarded is settled conclusively by numerous adjudicated cases; the one in which the distinction between the property of the corporation and the character of the property which the share holder has by virtue of the ownership of the stock is most clearly drawn, being that of the Appeal Tax Court vs. Geer, 50 Md. 377, when the Court says: "The property of the corporation may be wholly real estate. *The shares of its stock are personal property only,*" (p. 337). Since then stock in a corporation is personal property, its natural *situs* in law is the residence of the shareholder. It is strongly urged, however, that such stock instead of being moveable, as is inevitably the case if its *situs* be that of the stockholder, is immovable and has a *situs* of its own where the principal office of the corporation itself is located. Numerous tax cases have been cited upon either side, in this connection, and it is probably impossible to reconcile all of the decisions where cases have arisen under the laws affecting, or designed to affect, the taxation of this sort of property, but the argument is that when the Statute makes such stock taxable at the point where the office or business of the corporation is located that there is a *situs* thereby given to it, and a *situs* once established must be its *situs* for all purposes. An analogy is also sought to be drawn from the attachment law which gives the right to lay the attachment in the forum having jurisdiction over the corporation, rather than that having jurisdiction over the owner of the stock; and still further from the fact that a transfer of stock upon the books of a corporation is required to be made conformably to the laws of the domicile of the corporation. It is perfect-

ly true that the National Banking Act, and the laws of our own State with reference to taxation, do make express provision for the taxing of the stock at the place where the bank carries on its business, but these are both provisions of statute; so too in the case of an attachment, the right of the plaintiff to attach is dependent, and dependent solely, upon the positive enactments of statute (Code, Art. 23, Sec. 377, and Art. 9, Sec. 18). These statutes must either be declaratory in their nature or else in derogation of the law as it exists independent of the statute, and statutes of this character have never been deemed or pronounced by the Court to be in the nature of declaratory statutes; they must, therefore, be deemed and treated to be statutes in derogation of the law as it exists, independently of them, and in such cases are to be construed strictly, and the property to which they thus give a *situs* for a specific purpose, cannot thereby be said or claimed to be given that *situs* for any other or different purpose, but as to such other purposes must stand as it would in law, independent of any statute whatever, and in such case would become liable to the principle *mobilia sequuntur personam.* This doctrine seems to have been consistently followed in our own State ever since the case of DeSobry vs. DeLaistre, 2 H. & J. 191, and is quite fully and elaborately set out in the opinion of the Court of Appeals in the case of the Appeal Tax Court against Geer, *supra.* In this last case, as well as in the case of the Appeal Tax Court against Patterson, 50 Md. 373. the Court did not confine itself to simply the questions of taxation, which gave rise to those cases, but discussed very fully the whole law upon the subject; see also Keyser vs. Rice, 47 Md. 211.

The expressions of our Court of Appeals have been so positive and so frequent, that there is now no option but to deem the property which a stockholder has in his stock properly moveable in its character, except for the specific purposes for which it is given a *situs* by statutory enactment.

II. With regard to the question of comity, no less than upon the other question is there a conflict of decisions, even decisions in the same State (as notably in New York) are irreconcilable. It is undoubtedly true that the Courts of one State will not through a feeling of comity give effect to the laws of another State when the doing so is in opposition to positive statutory enactment upon a matter involving a pronounced, settled, public policy of the State, but while the statement of the principle sounds plain and of easy comprehension, its application to particular cases is sometimes involved in difficulty. Thus it is difficult to conceive of a matter of more important public policy than the laws governing a statute of distribution of the estate of decedents, it is a positive enactment, a declared policy of the State, a matter of public interest, yet our own Court of Appeals has in the case of Noonan vs. Kemp, 34 Md. 73, declared that this yielded to comity, and in that case made the distribution of the estate of a decedent in this State in accordance with the laws of Kentucky, and in contravention of our own statute upon the same subject. It is difficult to conceive of a statute embodying a better defined principle of public policy than the statute against perpetuities, and yet the Courts of New York in a principle of comity have sustained a devise made by a non-resident testator to a charitable object in New York which would have been utterly bad if made by one of their own citizens, and which was in direct violation of the policy of the State upon that subject, as declared and placed upon the statute books.

Parsons vs. Lyman, 20 N. Y. 103.

Harvey vs. Richard, 1 Mason 381.

Despard vs. Churchill, 53 N. Y. 199.

It is true that the case of Harper vs. Stanbrough, 2 La. An. 377, and some others are in opposition to this, but in this condition again, that which must be controlling in Maryland, is the decision of our own Court of last resort, and that in the case of Noonan vs. Kemp, *supra*, had been in favor of supporting such comity.

It will hardly be seriously questioned that had Mr. Nathan H. Clark died intestate, and had the statute of distribution in Delaware been different from our own, that under the rulings of our Court of Appeals, his estate, including the very stock in controversy would have been distributed in accordance with the provisions of the Delaware Statute, and principle is apparent sufficiently strong to justify the conclusion that while in a case of the distri-

bution of an intestate's estate our Courts would have disregarded the Maryland Statute in favor of the statutes of the domicile of the testator, they would refuse to do so where he had left a will, and if not then equal effect must be given to the laws of a sister state in the construction of that will.

The demurrer will therefore be sustained and the bill dismissed with costs.