CASE 92—EQUITY—NOVEMBER 16, 1882.

# The Commonwealth v. Gaines & Co.

### APPEAL FROM FRANKLIN CIRCUIT COURT.

·On the 10th January, 1880, appellees had in their warehouse in Franklin county 9,297 barrels of whisky sold by them, and belonging principally to non-residents of this state.

1. *Held*—Whisky in this state on the 10th January, 1880, belonging to non-residents of Kentucky, or other owners whose names cannot be ascertained, or who fail to disclose their ownership, is liable to state and county taxation under the equalization law.

2. The possessory control held by appellees of the whisky is sufficient to authorize its assessment to them.

W. LINDSAY AND W. H. & IRA JULIAN FOR APPELLANTS.

1. The power of the county court to make assessments of property is clearly established. (Gen. Stat., 703; McCallister v. Commonwealth, 6 Bush, 581.)

·2. The property in controversy is subject to taxation, and must be assessed to the owner or the person in possession thereof. (Gen. Stat., 718, 720, 721; 23 N. Y., 232; 21 Ind., 335; 27 *Ib.*, 288; Cooley on Taxation, 540; Ky. Law Rep., Sep., 1881, p. 6.)

.3. Whisky stored in warehouse is in the possession of the distiller. (Acts 1869, p. 56; 9 Bush, 3; U. S. Stat., sec. 3274.)

A. DUVALL AND D. W. LINDSEY FOR APPELLEES.

1. The whisky is not taxable under the statute, for the reason that such property is not by our statutes taxed in kind, but can only be included in the estimate which its owner, and he alone, can make in arriving at "his value under the equalization law.":

.2. Appellees are not required to list the property. It could not increase *their* worth or their balance after deducting their indebtedness under the statute. (Evans v. Commonwealth, 13 Bush, 269; Gen. Stat., chap. 92, art. 5, secs. 11, 12, 13, 14, 18, 21, 22, 23, 25; *Ib.*, chap. 92, art. 4, secs. 1, 4; *Ib.*, chap. 92, art. 1, secs. 4, 5, 7; Washington v. Covington, MS. Op., Nov. 12, 1881; Cooley on Taxation, pp. 18, 179, 200, 201; Bouv. Law Dic.; Gates v. Barrell, MS. Op., Feb. 20, 1881; High on Inj., 796, 801.)

·CHIEF JUSTICE HARGIS DELIVERED THE ·OPINION OF THE COURT.

On the 10th of January, 1880, the appellees had in their ¡possession 9,297 barrels of whisky, 8,402 barrels thereof

being stored in their bonded warehouse, and 895 barrels: stored in their free warehouse.

Prior to that date, they had sold the whisky to various persons, to whom they issued warehouse receipts therefor.

The appellees failed to list the whisky for taxation.

And the assessor returned his tax-book, but did not return the appellees as delinquents in any respect.

Thereafter the sheriff reported appellees' failure to list the whisky to the county clerk, who issued a summons against them to answer as delinquent tax-payers for the year named.

The appellees appeared, and defended themselves on the grounds that the whisky was not subject to taxation, or to be listed against them.

Upon a hearing, the county court adjudged that the whisky was subject to taxation, and the appellees, failing to list it themselves, the county clerk was directed to enter the list against them, and certify it to the sheriff and auditor, which was done.

The sheriff levied upon the property of the appellees for the tax assessed by the county court, and they brought this action in equity to enjoin the collection of the tax.

The circuit court rendered judgment perpetuating the injunction, and the appellant has prosecuted this appeal, assigning for error that the whisky is subject to taxation, and to be listed to the appellees.

A number of questions are made in the arguments advanced by counsel which may be passed by as not essential to the determination of the real issues involved in this appeal.

In regard to the supposed irregularities in the county court proceedings to assess the whisky, it is only necessary to say that no appeal was taken therefrom; and as:

those proceedings are not void, the irregularities, if there be any, cannot be corrected in this suit.

The vital questions to be adjudicated by us are these:

*First.* Whether the whisky belonging to non-resident or other owners, whose names the appellees do not know, or refuse and fail to disclose, is subject to state and county taxation.

*Second.* Whether the assessment to the appellees of the whisky as part of their worth under the equalization law is legal.

We will dispose of these questions in the order stated:

*First.* Section 4, of article 1, of chapter 92, General Statutes, specifies four classes of property which it requires to be listed by name, and these classes are embraced by the form of tax-book prescribed by section 1 of article 4.

But section 5 of article 1 applies to other sources of wealth which, as provided therein, the legislature has determined shall be taxed under what is styled, in the "form of tax-book," "value under the equalization law."

In naming what sources of wealth shall be considered in fixing the worth of persons, that section says:

."This section includes all property not exempt from taxation, *other than that mentioned in section four*, whether manufactured, produced, purchased, or otherwise procured, such as spirituous liquors, and all mixtures thereof," &c.

A comparison, therefore, of the two sections demonstrates that the articles specifically named in the fourth, and those designated in the fifth section, are all to be listed, and equally subject to taxation, the only difference between them being that the articles named in the fifth section are valued, and their value alone placed on the tax-

book under the general head "value under the equalization law," while the name, number, quantity, and value of property, locality and value of land and town lots directed to be listed for taxation by the fourth section, must be stated on the tax-book.

And whether the whisky listed by the county court belongs to residents or non-residents, its worth or value on the 10th of January, 1880, was subject to taxation under the equalization laws, and there is hardly room for sound argument on the proposition, as "*sic lex scripta est.*"

The relative rights and equities which may exist between the owner and possessor of the whisky cannot affect the power of the state to authorize its assessment to either of them, as the legislature may deem most prudent and apt to result in securing taxes therefrom.

Indeed, convenience and necessity unite in support of the well established doctrine that the taxing power may impose taxes upon persons or property, and may adopt remedies for their collection which operate against the person of the owner, or the possessor, or the thing taxed, or all of them combined.

And if this were not the case, it would be easy for non-resident owners, from the proximity of the states and the commercial rights of all citizens in each, through the quick transportation of this age, to escape the payment of taxation on their movable property produced by our own soil, while it receives the protection of our laws. This would be unjust, and the legislature, in declaring that the owner *or* possessor should list and pay taxes on property belonging to the one, or in the hands or keeping of the other, intended to prevent it.

*Second.* The appellees had no special or general authority or direction from their vendees to list the whisky for taxation, or to pay the taxes on it for the year 1880.

And it does not appear that the whisky had been listed in any other county, or that any taxes have been directly or indirectly paid on it.

Under this state of facts, ought the county court to have assessed the whisky to the appellees, who are not the owners, on the ground alone that they were the possessors of it on the 10th of January, 1880?

Section 4, of article 4, chapter 92, General Statutes, provides that—

"All estate, real and personal, and all interest in such estate, named and specified in the tax-book aforesaid, shall be assessed for taxation, and the tax paid by the owner *or possessor* thereof to the person authorized by law to receive the same."

And section 11, of article 5, *ibid*, also provides that—

" All taxable estate shall be valued as of the 10th day of January, in the year listed; and the *person* owning or *possessing* the same on *that day* shall *list it* with the assessor, *and remain bound* for the tax, notwithstanding he may have *sold* or *parted* with the same."

By section 13, *ibid*, prescribing the oath to be administered by the assessor to persons listing property, they are required to swear that the list of taxable property given in by them embraces all and every species of property *belonging* to them or in their *possession* subject to taxation on the preceding 10th of January, and that they will true and perfect answers make to such questions as may be asked them *concerning their taxable property* or *that of others in their possession*, or *about to be listed by them for such others.*

And section 1, of article 1, of that chapter, says the taxes "shall be paid by the owner *or persons assessed.*"

When the sections of the statute referred to are considered together, there can be no room to doubt that the legislature, where the ownership and possession are separate, intended to hold both the owner and possessor liable to list until one or the other should list the property.

The words "owner" and "possessor," and "owning" or "possessing," are not used in the statute as synonymous terms, as contended by the ingenious counsel for appellees.

Those words are to be interpreted in the light of the spirit and purpose of the several sections of the statute which employ them. Thus considered, we think, in a case like this one, that "owner" refers to the person to whom the title, absolute or qualified, to the property belongs or in whom it is vested; and that "possessor" relates to the person who has the property of himself or others in hand or keeping, or under physical control, and such possession may exist with or without title.

The manifest object of the legislature in using these words disjunctively and in different senses was to prevent persons from retaining the title, and, at the same time, disposing the actual possession of taxable property in order to escape taxation upon it.

Section 11 of article 5, above quoted, declares that the person owning or possessing the property on the 10th day of January, in the year listed, "shall *list it* with the assessor, and *remain bound* for the tax, notwithstanding he may have *sold* or *parted* with the same."

The word "sold," used in the last line, relates to the disposition of the property by the person "owning" it, and the words "parted with" evidently relate to the transfer

of the naked possession of property by the person "possessing" it merely. And this construction, in addition to being natural, is fortified by the language of section 13 of the same article, which requires of persons listing property to make true and perfect answers concerning . . . . . the taxable property "*of others in their possession.*"

This language would be unintelligent and useless unless the property of others in the possession of the person listing property was intended to be listed to him, and to hold him "*bound for the tax,*" notwithstanding he may have "*parted with*" the same; and it matters not how he may have parted with it.

We are therefore of opinion that possessionary control of property is sufficient to authorize its assessment to the possessor or keeper of it. But this rule should not be misapplied to an absurd assessment of property which may be loaned to a neighbor for a day, or that necessarily passes through different hands in its temporary use, and which may be easily and properly assessed to the owner who, in the absence of contract stipulating otherwise, is equitably and legally bound to pay the taxes as between himself and the possessor not coupled with an interest.

Wherefore, the judgment is reversed, and cause remanded, with directions to dismiss appellees' petition, and dissolve the injunction.