# DANIEL H. CARSTAIRS ET AL *vs.* W. B. COCHRAN, TREASURER AND COLLECTOR, ETC.

*Taxation of Distilled Spirits—Custodian May be Required to Pay Tax For Owner—Levy of Tax on Persons and Not on Property—Obiter Dictum—Time and Mode of Levy of Tax—Suit by Treasurer— Amendment of Declaration.*

When a question of law is raised by the issues in a case and the Court makes a deliberate expression of its opinion upon that question, such opinion is not to be regarded as an *obiter dictum*, although the fina judgment in the case was founded upon some other point also raised by the record.

In *Monticello Co.* v. *Baltimore City*, 90 Md. 416, where the Act of 1892, ch. 704, relating to the taxation of distilled spirits was attacked upon various grounds, this Court held the Act to be invalid because it made no provision for giving notice of the assessment, but also said in its opinion that there was no force in another objection urged against the Act, namely, that it was unconstitutional because the distiller was required to pay the tax on spirits in his possession but owned by third parties. *Held*, that this expression of opinion concerning the constitutional objection raised was not a mere *obiter dictum*, but was a ruling of the Court upon a point argued in the case and is decisive of the same objection now made in this case against the Act of 1900, ch. 320, amending said Act of 1892.

A person in this State, who has the custody of tangible personal property owned by a non-resident, may lawfully be required by statute to pay the taxes thereon, receiving a lien on the property for his reimbursement.

The Act of 1900, ch. 320, amending the Act of 1892, ch. 704, requires every distiller and warehouseman having the custody of distilled spirits to pay the taxes on the same although owned by other persons, and he is given a lien on the spirits for the taxes so paid for the owner. *Held*,

1st. That the tax is levied not upon the property itself but upon the owners thereof and is therefore in accord with Declaration of Rights, Art. 15, which provides that every person in the State or person holding property therein ought to contribute his proportion of public taxes.

2nd. That the requirement that the distiller shall pay the tax for the owner is not unlawful or unreasonable, the Legislature having the power to require him as custodian to pay the tax on property in his possession although owned by unknown persons holding warehouse receipts ; he is made the agent of the State to collect the tax and receives a lien on the property to secure repayment.

The local law of Baltimore County provides that when the term of office of a treasurer expires before the completion of proceedings taken by him to collect taxes, then the newly-elected treasurer shall continue and complete the proceedings. *Held,* that where a treasurer brought suit to collect certain taxes and before trial of the same a new treasurer was elected, the Court has the power to order the declaration to be amended by striking out the name of the former treasurer as plaintiff and inserting that of the new treasurer.

At the time of the levy of the tax for a certain year on distilled spirits in the possession of the defendant, to recover which tax this suit was instituted, the County Commissioners making the levy had not received from the State Tax Commissioner a statement of the exact amount of spirits held by the defendant, but made up an estimate from other sources and sent a tax bill to the defendant. *Held,* that the property having been assessed the precise amount due as taxes thereon could afterwards be lawfully ascertained.

Appeal from the Circuit Court for Baltimore County (BURKE, J.)

*Plaintiff's 1st Prayer.*—If the jury find that the State Tax Commissioner on or about the 28th day of February, 1901, made return to the County Commissioners of Baltimore County of the number of barrels of spirits and the valuation set thereon by said Tax Commissioner held by the defendants, or in their custody on the first day of January, 1900, as appears by the return offered in evidence and that the County Commissioners of Baltimore County in making their levy for State and county taxes for the year 1900, included in their said levy the sum of four thousand five hundred dollars for taxes due by all the distilleries in Baltimore County, including the taxes estimated to be due by the defendants for that year; and if the jury shall find that defendants have not paid the taxes on said spirits, so returned by the Tax Commissioner, or any part thereof, then the verdict of the jury in this case should be for the amount of taxes claimed by the plaintiff with interest thereon from June 14th, 1901. (*Granted.*)

*Plaintiff's 2nd Prayer.*—If the jury shall find that the defendants in the month of January, 1900, made return to the State Tax Commissioner, under the Act of 1892, chapter 704, of the amount of spirits in their bonded warehouse on the

first of January, 1900, and that the State Tax Commissioner valued said spirits at eight dollars per barrel, and that on the 19th day of April, 1900, the State Tax Commissioner wrote to the County Commissioners of Baltimore County, saying that he would transmit the returns of spirits held in the warehouses in Baltimore County the following week, and that the same was not sent until on or about 28th February, 1901, and if they further find that the County Commissioners in making their levy for State and county taxes for the year 1900, made the same upon an estimate of four thousand five hundred dollars due for spirits by the distilleries situated in Baltimore County, and included therein the taxes estimated as proper to be levied for taxes due by defendants for spirits for the year 1900 under the Act of 1892, chapter 704, aforesaid, and if they find that said defendant has not paid taxes on said spirits for the year 1900, then the verdict in this case should be for the plaintiff for the amount of the tax claimed with interest thereon from June 14th, 1901.   (*Granted.*)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*D. K. Este Fisher* and *Shirley Carter* (with whom was *W. Cabell Bruce* on the brief), for the appellants.

This Court, in the case of the *Monticello Distilling Co.* v. *Baltimore City*, 90 Md. 416, decided that the Act of 1892, ch. 704, for the taxation of distilled spirits, was unconstitutional so far as taxes levied on spirits in Baltimore City were concerned, because there was no provision of law for an appeal from the valuation of the Tax Commissioner, and no provision for notice to the person to be taxed. *This was the sole ground of the decision in that case.* This Court, it is true, expressed the opinion that there was no constitutional objection to the law on the ground that it required the distiller to pay another's tax; but this was not necessary to the decision of the case, and was not involved in the decisive objection on which the case was decided. It was therefore an "*Obiter Dictum*," and

does not prevent the Court from reviewing the question when, as here, it will necessarily be the decisive point in the controversy.

In the case of *Kemp* v. *Fowble*, 92 Md. 8, this Court decided that the Act was constitutional so far as taxes on spirits in Baltimore County were concerned, because a local law for that county provided for an appeal from the valuation of the Tax Commissioner. In the latter case, *no question of the constitutionality of the law upon other grounds seems even to have been argued by the counsel in the case.*

In view of the expressions of this Court in the Monticello case, it is with reluctance that we again ask the Court to consider whether it is not a valid objection to the law that it takes one man's goods to pay another's debt, and venture to present an argument upon the subject. We are compelled to do so by the fact that the law bears hardly upon the distiller in Maryland, because of the fact that it enables distillers in other States, where there is no such law, to undersell them in the market by the amount of tax exacted under this law. *But there is more involved in the point than this. It involves the broad subject of the right of persons to be protected in the enjoyment of their property.*

It is submitted that the Act is not a valid enactment, but is opposed to fundamental principles of constitutional law. It is opposed to Magna Charta, which declared that no freeman should be disseized of his freehold, but "by the judgment of his peers or by the law of the land." 10 *Amer. and Eng. Ency. Law*, 290, 2nd ed. And to the 14th Amendment, sec. 1, of the Constitution of the United States, which guarantees that: "No State shall *make or enforce* any law which shall abridge the *privileges or immunities* of citizens of the United States; nor shall any State deprive any person of life, liberty or *property* without due process of law. * * *" And to our own Constitution, which declares "That no man ought to be * * * deprived of his life, liberty or *property* but by the judgment of his peers or the law of the land."

*The "Law of the Land" does not permit one man's property*

*to be taken to pay the debt of another,* and a law which does so is an obvious invasion of his immunity from liability for the obligations of others. The principle was recognized by this Court when it said in *Thistle* v. *Frostburg Coal Co.,* 10 Md. 144, that "It· is clearly not within the scope of the legislative power to give to a law the effect of taking from one man his property and giving it to another, etc.

And in the case of *Hartman* v. *Greenhow,* 102 U. S. 684, which said : "Surely it is not necessary to argue that an Act which requires the holder of one contract to pay the taxes levied upon another contract held by a stranger cannot be sustained. Such an Act is not ·a legitimate exercise of the taxing power ; it undertakes to impose upon one the burden which should fall, if at all, upon another." See also *Dent* v. *W. Va.,* 129 U. S. 414; *Camp* v. *Rogers,* 44 Conn. 291.

A just construction of the Act would seem to require that it should be construed as applicable only to spirits on hand belonging to the distiller or warehouseman, for only by so construing it does it seem to us that its validity can be maintained. But its language would seem to indicate that the Legislature intended to reach spirits belonging to persons other than the distillers themselves. It requires them to report not merely the quantity of spirits belonging to themselves in the bonded or other warehouses, but the quantity of *"all distilled spirits on hand,"* and upon the distilled spirits so reported on hand, the County Commissioners and the Appeal Tax Court are required to levy taxes, (section 3), and these taxes the distiller or warehouseman is required to pay. No distinction, therefore, seems to be made between the spirits belonging to the distiller and those belonging to other persons. (Section 4 and section 8.)

It would seem to be a stretch of legislative authority to require a distiller to pay the taxes out of his own money upon spirits belonging to another which were in his custody, even if a complete and effective lien were given for the amount so paid, and the machinery were clearly specified for its enforcement ; but where there is no quick and effective mode of en-

forcing the lien, and indeed no mode whatever provided, the injustice of the law and its violation of fundamental rights would seem to be conspicuous, independent of the impossibility of enforcing it under any circumstances, even if the method of so doing were distinctly specified and given in the Act. This law does not even undertake to provide any mode of enforcing the lien attempted to be given, and the distiller is left to the slow and expensive remedy of enforcing liens recognized by Courts of equity. The lien amounts to nothing. It is a mere sop thrown out to the distiller.

But the injustice of the law is still more conspicuous when the provisions of the internal revenue laws are borne in mind. They put an officer of the United States in charge of every bonded warehouse, and the moment the spirits are within its walls they are in his custody. He (R. S. U. S., secs. 3271 and 3273) holds in his possession the key of the bonded warehouse, and no one—not even the distiller or owner of the warehouse—can enter it except in company with the officer in charge when admitted by his key. No spirits can be withdrawn from the warehouse except in his presence, and after the payment of the United States internal revenue tax of $1.10 per gallon and on the order of the Collector of Internal Revenue of the district. (R. S. U. S., sec. 3274.) From the time the spirits enter the warehouse they are in the custody of the United States.

Spirits or whiskeys are sold as a rule as soon as made, and when placed in a warehouse they are the property of persons other than the distiller, and the moment they come into existence are subject to an internal revenue tax of $1.10 per gallon (R. S. U. S., sec. 3248, sec. 3251); and the title to them is represented by negotiable warehouse certificates which pass from hand to hand as freely as bank notes. Sold today to a man in Baltimore, they are the property of a resident of Illinois or some other State tomorrow, and after the warehouse certificate is delivered, the warehouseman cannot know who is the owner of it until the bearer of the certificate presents it to withdraw the goods. By Act of Congress, the owner may

leave the spirits in a bonded warehouse, tax unpaid, for a period of eight years.

Hard, indeed, is the lot of the distiller who pays the tax under the Act of 1892, ch. 704, due the State of Maryland and the county or city, as the case may be, from another. He cannot enforce his lien immediately, for two reasons : *First*, because he cannot get the spirits out of the warehouse, for the reason that he does not know who is the owner, and cannot obtain the certificate which guarantees to the owner that the spirits are and will be in the warehouse until the certificate is presented and the spirits withdrawn by the holder of it. And *Second*, because no spirits are permitted by the United States to leave the warehouse until the government tax of $1.10 per gallon has been paid. So that even if he had the warehouse certificate, he would be obliged to pay an enormous tax to the government in order to collect the smaller tax he pays the State and county or city.

This Act of 1892, was probably modelled upon the section of the Code which requires corporations to pay taxes upon the shares of its stock ; but there is a great and fundamental distinction to be observed between the relation of the distiller to his vendee and that of the corporation to its stockholder. The distiller has no funds of his vendee in his hands out of which he can pay the tax ; whereas, when the corporation pays the tax due upon stock standing in the names of its stockholders it pays it with money of the stockholder, for every stockholder is an owner of an undivided interest or share in the property of the company, and that is the only ground upon which the requirement that the corporation shall pay the tax can be justified, unless it be on the ground of contract. The corporation is, in truth, merely a collector for the State and municipality, because it has in hand money of the stockholder from whom the tax is due, since he is one of the owners of all the corporate property. But the distiller, having in hand no funds of his vendee, cannot be said to be merely made a collector by this Act of Assembly. To comply with it, he must supply his own money. It therefore com-

pels him, *with his own money, to pay the debt of another*, and this, it must be admitted, the Legislature cannot compel him to do. Wherever it has been held lawful to require the tax due from one to be paid by another, it is believed that it will be found that it is either the case of a corporation required to pay a tax due from its stockholder upon his stock, or that the person made collector has funds in his hands which he can apply to the purpose, belonging to the person whose tax he is required to pay, and that no case can be found in which one person, *out of his own money*, has been required to pay a tax due from another.

The Act is opposed also to the Fifteenth Article of our Bill of Rights, which provides that every person in the State, or holding property therein, "ought to contribute *his* proportion (*not another person's proportion*) of public taxes for the support of government, according to *his* actual worth, etc." This section fixes the limits of the taxing power ; and by providing that every person in this State, and every person holding property therein, shall contribute "*his*" proportion of taxes according to "*his*" actual worth, inferentially denies to the Legislature power to exact of any one the payment of some other person's proportion of taxes by attempting to treat him as a "*collector.*"

The spirits were not included in the levy for the year 1900. The levy of taxes in Baltimore County is to be made within the year. Code, P. L. L., Art. 3, sec. 32 and sec. 33. The case of *Hopkins, etc.,* v. *Van Wyck,* 80 Md. 7, therefore does not apply. If the levy is to be made within the year, then obviously a levy made after the expiration of the year is unlawful. It is admitted that the levy of these taxes was not made until after February 28th, 1901, for until then the information which was necessary to be had before a levy could be made was not received.

It was contended that the County Commissioners made a levy in 1900 upon an estimate so far as distilled spirits were concerned. (Art. 25, sec. 7, Code, P. G. L.) But even conceding that they could estimate the amount of property on

which the tax was to be levied, it surely could not mean that any tax levied by estimate could be regarded as levied against any one until he appeared upon the tax books.    There is no evidence that the appellants were on the tax books at all until 1901.    Taxes are due from persons and not from property under our Constitution.    Besides that, the word "levy" implies a seizure, and how could the County Commissioners by their levy have seized in 1900 spirits for taxation of the existence of which they did not know until the return made to them by the Tax Commissioner in February, 1901 ?

*D. G. McIntosh* for the appellee.

The defendants' first and second bills of exceptions, based upon the exclusion of certain testimony, raises the same question contained in their second, third and eighth prayers, which were rejected.    The object of the excluded testimony was to show that the ownership of the whiskey, with the exception of a small number of barrels, was not in the defendants, and that it belonged to other persons who were unknown to them. The second prayer of defendants claimed there could be no recovery by plaintiff, because there was no evidence that the defendants were the owners on January 1st, 1900, or subsequently thereto, of the whiskey mentioned in the tax bills and the return of the Tax Commissioner.    This question has been so thoroughly discussed in the case referred to of *Monticello Co.* v. *Baltimore City*, 90 Md. 423–427, that it would be idle to suggest further argument.    It is now *res adjudicata.*    See also *Com.* v. *Gaines*, 80 Ky. 489.

The defendants' fourth prayer claimed there was no evidence in the case that the spirits reported to the State Tax Commissioner in the return made him by defendants was included in the levy of the County Commissioners for the year 1900, and therefore the verdict should be for the defendants ; and the fifth prayer is in effect the same.    The evidence on this point is to be found in the declaration of the levy and in the testimony of Green.    He stated that the levy, so far as distilled spirits is concerned, was made on a basis of $500,000, which

included the spirits of defendants; and on cross-examination he said the County Commissioners did not know the amount of spirits chargeable to each distillery until they received defendants' return from the Tax Commissioner, which was after the levy was declared.   It is not pretended that the tax for which this suit is brought is in point of fact incorrect, or that it represents incorrectly the amount of spirits held by defendants on January 1st, 1900, and liable to tax when the levy was declared, but only that the County Commissioners did not know at this time exactly what part of the $500,000, the basis of their levy, the defendants would be liable for.   The point appears to be largely technical.   It does not appear that any injustice has been done defendants.   On the other hand, they seek to take advantage of a supposed irregularity to escape their share of the common burden of taxation.   Stated in general language, the contention of the defendant, as expressed in their instructions, is that there can be no valid levy of a tax by a municipal body unless at the moment of making the levy the precise amount and value of the subject-matter to be taxed be definitely ascertained: That it is beyond the reach of the taxing power to base its action upon "estimates" laid before it, and this is in spite of the fact that through no fault of its own the taxing power has been unable to get specific information in as precise a manner as it might do afterwards.   If this be so, the taxing body would be constantly exposed to the risk of having its action nullified, by the failure either of the person subject to the tax or of some governmental department over which it had no control to furnish the particular information at the desired moment.   *Cooley on Taxation*, 199.

Revenue statutes are not to be regarded as penal, and therefore to be construed strictly.   They are remedial in their character and to be construed liberally to carry out the purposes of an enactment.   *U. S.* v. *Hodson*, 10 Wall 395.   In *Hopkins* v. *Van Wyck*, 80 Md. 7, the property of the decedent in possession, but not upon the assessment books at the time of the levy for taxes by the Mayor and City Council, was held liable to taxation, and when the Appeal Tax Court entered

the omitted property on the tax books, after the levy for the year had been made, such action was regarded as regular and proper.    In that case the City Code provided that the valuation of the property, as it shall appear upon its assessor's book on the first Monday in March, shall be *final and conclusive* and constitute the basis upon which the taxes for the ensuing year shall be assessed and levied ; notwithstanding, the Court said of that provision : " It was never designed to exempt from taxation for a current year the individual who, by adroitness or otherwise, succeeded in eluding the vigilance of the assessor, or who by *inadvertence* was not rated with all his assessable property on the first Monday in March of that particular year.    Nor was this provision intended to put a limit or restriction on the power of the municipality to make an assessment of omitted or escaped property after the date indicated."

This language reaches further than the case at bar.    Here the property was not omitted.    It was assessed, but the precise amount, through inadvertence or otherwise, could not be ascertained, and was left to be entered subsequently.    In any event, whether it be competent or no for a municipal body to make a levy upon taxable matter in the absence of knowledge as to the precise amount or value of the property to be taxed ; any such defect, if such exist, in the exercise of the power, is covered in this case by the return of the Tax Commissioner to the County Commissioners, and their placing it in the levy list in the hands of the collector.

PEARCE, J., delivered the opinion of the Court.

This appeal constitutes the third attack upon the validity of of the Act of 1892, ch. 704, as now amended by the Act of 1900, ch. 320, being secs. 204 to 213, inclusive, of the Supplement to the Public General Code of Maryland, providing for the collection of taxes upon distilled spirits in this State.

The appellants admit that all the features of the law which are here assailed upon constitutional grounds, were considered by the Court in *Monticello Co.* v. *Baltimore City*, 90 Md. 416,

and that while the Act was there held invalid, *as it then stood*, because of the failure to provide for a hearing in respect to the valuation to be placed on the spirits for the purposes of taxation, it was declared to be "in other respects free from constitutional objections." They contend, however, that the *sole ground of the decision in that case* was the failure to provide for notice of assessment (a defect which has since been cured by the Act of 1900, ch. 320), and that the expression of opinion upon any other point was not involved in the decisive objection on which the judgment was reversed, and was therefore an "*obiter dictum*" which should not preclude them from asking, or the Court from granting, a reconsideration of what was not then, but necessarily now is, the decisive point in controversy.

We cannot agree that the expression of opinion referred to was an *obiter dictum*. All the constitutional objections which are here urged, were urged in that case by the late Judge Fisher with all the ability and force for which he was so justly distinguished, and the ruling upon the prayers, which there constituted the single exception, required the consideration by the Court of all those objections. It may be difficult to frame a concise definition of an *obiter dictum* applicable to every such expression of opinion, and some Courts incline to the rule that the most deliberate expression of opinion, upon a question distinctly raised in the record, and fully argued by counsel, may nevertheless be regarded as a *dictum*, unless essential to the actual disposition made of the case. But as Bouvier well says: "It is difficult to see why, in a philosophic point of view, the opinion of the Court is not as persuasive on all the points which were so involved in the cause that it was the duty of counsel to argue them, and which were deliberately passed on by the Court, as if the decision had hung upon but one point;" and in Maryland the rule is in accord with this view. In *Alexander* v. *Worthington*, 5 Md. 489, it is said: "All that is necessary in Maryland to render the decision of the Court of Appeals authoritative on any point decided, is to show that there was an application of the judicial mind to the

precise question adjudged;" and in *Michael* v. *Morey*, 26 Md.
261, it was said that a decision there cited, could not be said to
be *obiter dictum*, "as the question was directly involved in the
issues of law raised by the demurrer to the bill, and the mind
of the Court was directly drawn to, and distinctly expressed
upon the subject." But as the question here is said to be one
of much importance to the owners and custodians of this spe-
cies of property, and is certainly important to the State, which
derives all its needed revenues from taxation, and as it has
been argued here with great earnestness and conspicuous
ability, we shall state as briefly as possible the reasons which
induce us to adhere to the views heretofore expressed. The
provisions of the Act of 1892, ch. 704, were sufficiently de-
tailed in the opinion rendered in *Monticello Co.* v. *Baltimore*
*City, supra,* and that statement will be adopted for this case
without repeating it here. That Act is assailed here as it was
there, as fundamentally vicious, and upon precisely the same
grounds, with the exception of the want of notice of assess-
ment, which has been cured by the Act of 1900, ch. 320.
These grounds are twofold; *first,* that it lays a tax upon prop-
erty, and not upon the owner of the property, and *second,* that
it compels one, not the owner of the spirits, to pay the tax
due by the owner who is usually unknown to the party com-
pelled to pay.

Upon the first of these grounds we said in the *Monticello*
*case:* "Taxes of the kind here dealt with, are, under Art. 15,
of our Declaration of Rights, levied not on *things,* but on the
*owners* of things ; and the value of the things owned fixes the
measure of the owner's liability to contribute in taxes towards
the support of the government. This is an axiom of political
economy, no less than a fundamental provision of our organic
law. *Appeal Tax Court* v. *Patterson,* 50 Md. 366; *U. S. Elec.*
*Power and Light Co.* v. *State,* 79 Md. 63. It cannot there-
fore be presumed that the Legislature deliberately intended to
disregard this principle, and to place the tax on the spirits,
and not on the owners of them. 'Every person in the State,'
says the 15th Art. of the Declaration of Rights, 'or person

holding property therein, ought to contribute his proportion of public taxes for the support of government according to his actual worth in real and personal property.' It is the individual, then, who is *in* the State, or who holds property *therein*, that is liable to taxation. He may be out of the State, he may be a non-resident, but if he has property situate here, he is as much bound to contribute to the support of the government according to the value of that property as though he were permanently domiciled within the limits of the commonwealth. The purpose of the Act, obviously, was to raise a revenue from the owners of a class of property which up to the time of its adoption, had not been reckoned in the assessment upon its owners ; and the peculiar nature of the property itself, the known difficulty in tracing its ownership, and the ease and facility with which the title to it is transferable, were all vital elements to be considered in devising a scheme for subjecting the persons who owned, had possession of, or controlled these distilled spirits, to the obligation of contributing their just share of the public burden. Though the language employed, like that used in many of the other assessment laws, if read literally would indicate an intention to impose the tax on the property, and not on the owner of it, that is not its meaning when considered in connection with the settled policy of Maryland as announced in the Declaration of Rights, and we hold therefore that the tax is upon the owner of the spirits, and not specifically upon the spirits."

We have reproduced this passage from the opinion in the *Monticello case*, as a clear, adequate and satisfactory exposition of the correspondence of the statute, in this regard, with the 15th Article of the Declaration of Rights, upon which, after reconsideration of the subject, we feel we can safely repose. In support of this confidence we may appropriately refer to the language of *Appeal Tax Court* v. *Patterson, supra,* in which the Court, quoting from *Cooley on Taxation,* declares that protection of the government is the consideration for which taxes are paid ; that this protection may be either to the rights of person, or to the rights in property, and that

taxes may consequently be imposed when either person or property is within the jurisdiction, and that it is competent for any State to provide that tangible personal property situated within it may be taxed there. The Court then proceeded to say: "The 15th Article of our Declaration of Rights is apparently a modification of one of the four maxims with regard to taxation in general, laid down by Adam Smith in The Nature and Causes of the Wealth of Nations. That distinguished author's first maxim is, 'The subjects of every State ought to contribute towards the support of government as nearly as possible in proportion to their respective abilities ; that is in proportion to the revenue which they respectively enjoy under the protection of the State.' " The analogy of thought and expression here is marked and throws a clear light upon the meaning of our 15th Article. And so in *Ward* v. *Const.*, 10 B. & C. 625, where a tax was payable by all persons "having or holding lands," the words were held to apply to all persons receiving the rents and profits, and so to embrace both lessor and lessee, according to the value of their respective estates or interests in the lands.

The argument of the appellants upon this point as stated in the language of their brief, is, that this Act compels one person to contribute *not his proportion*, but *another person's proportion* of public taxes for the support of government, by requiring him to act as collector. But this statement confounds *contribution* and *payment* and wholly omits the consideration of the lien given the distiller upon the property in his custody, which effectually protects him against the *contribution* of another's proportion of taxes, while it *secures* to him the repayment of that which he is required to collect and pay upon the faith of the lien created in his favor. The contribution to public taxes required of every property owner according to his actual worth in real and personal property, necessarily requires uniformity of taxation and though both the standard by which valuation is made, and the rate of tax imposed, be uniform in each class, yet the uniformity required by Art. 15 as a vital element of "just proportion" cannot be attained unless

*all* the tangible property in the State is so valued and assessed, and unless its owner wherever he may be does contribute his proportion according to the value of that property. So far then, from the 15th Article forbidding the tax here sought to be recovered, it imperatively requires that some adequate means be devised for enforcing its payment.

In reference to the objection that the Act in question takes one man's property to pay the debts of another, we said in the *Monticello case :* "The requirement that the distiller shall pay the tax for the owner is neither unreasonable nor unlawful, because it simply makes him the agent of the State to collect for the State, precisely as a corporation is made an agent to collect from its stockholders the tax due by them on the stock which they hold. The legislation of 1892 with respect to distilled spirits, is, in this particular, identical with the provisions of the Code relating to the tax on shares of stock, and these latter have been upheld by this Court as valid enactments. *Casualty Ins. Co.'s case*, 82 Md. 564 ; *Amer. Coal Co.* v. *County Comms.*, 59 Md. 197."

By sec. 138 of Art. 81, the tax upon shares of stock in home corporations held by non-residents, is to be levied and collected from such corporation, and may be charged to the account of such stockholders, and shall be a lien on the stocks therein held by them respectively until paid ; and sec. 141 makes a similar provision as to resident stockholders, except that no lien is given as to them. In 59th Md., *supra*, the Court said : "The statute having created the duty and obligation to pay, when the shares of stock are assessed to the individual owners, that duty and obligation on the part of the corporation may be enforced by a proper action at law, the plaintiff in such case showing the right claimed to be within the statute." In the *Casualty Co.'s case, supra*, the decision in 59th Md. was confirmed and reference was made to *Nat. Bank* v. *Kentucky*, 9 Wall. 353, in which the Court said : "In the case of shareholders not residing in the State, it is the only mode in which the State can reach their shares for taxation." And JUDGE COOLEY says on page 373 of his work on taxation : "Statutes

sometimes provide that tangible personal property shall be assessed wherever in the State it may be, *either to the owner himself*, or *to the agent or other person having it in charge; and there is no doubt of the right to do this, whether the owner is resident in the State or not,"* and numerous cases are cited in support of this statement of the law.

The case of *Hartman* v. *Greenhow*, 102 U. S. 684, was much relied on by the appellant to show that the Supreme Court denies this doctrine, but it cannot be properly so regarded. In that case, Hartman was the owner of certain overdue coupons cut from bonds issued by the State of Virginia. The bonds to which said coupons were originally attached were held by a third party, and Hartman tendered to the treasurer of Richmond these coupons in payment of taxes due by him, they being receivable by law for that purpose. The law however forbid the treasurer to receive such coupons in discharge of taxes, without first deducting the taxes due on the bonds to which the coupons were originally attached, and he claimed the right to make such deduction from these coupons. It was determined that the coupons held by Hartman being negotiable when detached from the bonds, and passing by delivery, ceased to be incidents of the bonds, and were distinct contracts imposing separate obligations upon the State, and that the holder of the contract evidenced by the detached coupons, could not be required to pay the taxes levied upon the contract evidenced by the bonds, and held by a stranger. But there is no analogy or similarity between that case, which deals with the rights of a holder of a negotiable instrument, and one in which the agent or custodian of another's tangible property is required to collect and pay the tax upon that specific property in his possession and control, in consideration of a lien thereon created for his protection. The appellants contend further however that there is a great and fundamental distinction to be observed between the relation of the distiller to his vendee, and that of the corporation to its stockholder, in that the distiller has no funds of his vendee in his hands out of which he can pay the tax, whereas, when the corporation pays the tax due

from its stockholder, it pays it with money of the stockholders, since every stockholder is an owner of an undivided interest in the property of the company. But this contention will not bear analysis. In *New Orleans v. Houston*, 119 U. S. 265, where a tax assessed upon the shares of stockholders was required to be paid by the corporation, which was entitled to charge the same to the account of the stockholder, and to collect it from him, the same theory was urged in objection as is here presented, but the Court said: "This payment is to be made irrespective of any dividends or profits payable to the shareholder out of which it could be repaid." And this is obviously true in every such case, since the tax may be payable at any period not coincident with the possession by the corporation of any dividends or profits payable to the stockholder, that is, between the payment of one dividend, and the declaring of another, or at a period when the usual dividends may not be earned, or have been passed, and when therefore there is no fund in the hands of the corporation belonging to the stockholder out of which the tax can be presently repaid ; and in such case, even though the stockholder be the owner of an *undivided* interest in the property of the corporation, such an interest would not provide a fund presently due from the corporation to the stockholder, and applicable to the repayment of the tax ; and it would therefore be necessary in the language of sec. 138 of Art. 81 "to charge the same to the account of the stockholder," to be *thereafter* repaid to the corporation, either by deduction from the next dividend, however remote, or from the next distribution of undivided profits, or from the undivided interest of the stockholder in the general property of the corporation, upon liquidation, or to be recovered by suit as against any other debtor, where no lien is given for repayment.

The confidence of the appellants therefore, that no case can be found in which one person, out of his own money, has been required to pay a tax due from another, does not appear to be justified.

The principle and policy of this legislation is not new in this State and the resistance to it in this case is due, we

apprehend, to its application to a species of property of large value which has heretofore escaped taxation. Section 66 of Art. 81 of the Code provides that "the tenant or person holding any leasehold estate, shall pay to the collector the taxes levied upon the demised premises, and shall have his action against the landlord for the sum so paid, or may deduct the same out of the rent reserved, unless otherwise agreed between the lessor and lessee." The alternative remedy given—of deduction from rent or recovery by action, is a distinct recognition of the fact that in such cases thê taxes may sometimes be payable when there is no rent due and when therefore the remedy by deduction would not be available. This provision of law has been in force since 1812, when it was made the duty of the tenant holding any leasehold estate "to pay the collector the sum valued for the interest or estate of any landlord," the language having since taken the form now appearing in the Code, and it was before this Court in *P. W. & B. R. R.* v. *Appeal Tax Court*, 50 Md. 411, where JUDGE ALVEY said: "This provision was intended as a means of facilitating the collection of taxes, there being many cases where the landlord might not be known or might be absent." The principle embodied in the Act of 1892 having thus been upon the statute book, unquestioned, so far as we are advised, for nearly one hundred years; being supported by the unqualified authority of JUDGE COOLEY in his work on taxation, and being impliedly recognized as a valid legal principle in 50th Md., *supra*, we could not now hesitate to uphold it.

Nor can we regard it as a hardship upon the distiller that he should be required to pay this tax in consideration of the lien given for its repayment. As was said in the *Monticello case* the purchaser of the warehouse certificate is chargeable with knowledge of what the statute provides, and it is thus made his duty ·to furnish the distiller with the necessary funds for the payment of this tax when demandable from the distiller. The holder of the certificate has *actual* knowledge of the quantity of spirits belonging to him in the distiller's hands, and the statute gives him *constructive* notice of the time when the tax is payable.

Upon application to the distiller therefore at the proper time, he can learn the amount of the tax payable by him thereon, and upon his failure to remit to the distiller, the latter may enforce his lien, and it is no legal objection to the validity of the law that the enforcement of the lien may be attended with some delay and that the costs incurred must await the completion of this process. We are not informed how these warehouse certificates are framed, but the distiller may if he see fit, have them so drawn as to impose upon the purchaser by express stipulation, the duty of paying to the distiller at stated periods such amount of money upon each barrel of spirits held by warehouse certificate, as may be deemed adequate to protect the distiller against this tax, and to provide for immediate sale in default of such payment ; and it is no answer to this to say that the government tax must also be paid before such sale can be made, since prompt sale will always ensure the immediate reimbursement of both taxes, and will avoid all cost of insurance and risk of leakage urged by the appellants as destructive of all value to the lien given.

Finally, in the case of *Commonwealth* v. *Gaines*, 80 Ky. 489, a statute in every respect similar to the Act of 1892, has been declared constitutional and valid. In that case, one of the questions considered by the Court was stated by it in these words : "Was the whiskey rightfully assessed to the appellees, who are not the owners, on the ground alone that they were the possessors of it on January 10th, 1880 ? ;" and in answering this question the Court said : "The relative rights which may exist between the owner and possessor of the whiskey cannot affect the power of the State to authorize its assessment to either of them as the Legislature may deem most prudent and apt to result in securing taxes from them. Indeed, convenience and necessity unite in support of the well-established doctrine that the taxing power may impose taxes upon persons or property, and may adopt remedies for their collection which operate against the person of the owner, or the possessor, or the thing taxed or all of them combined. If this were not the case, non-resident owners, from the proximity of

the States, and the commercial rights of all citizens in each, would escape taxation on their movable property produced by our own soil, while it receives the protection of our laws." It has been suggested by the appellants that this decision has no application in this case, because the Constitution of Kentucky does not, as ours does, require that taxes be imposed upon the owner of property and not specifically upon the property itself. But we have already said in the *Monticello case*, and have here repeated, that we hold this tax to be upon the owner of the spirits and not upon the spirits specifically, and the Kentucky case is directly in point, even if we disregard that part of the opinion which sanctions the imposition of a tax upon either persons or property.

The demurrer to the amended declaration, and the first, second, and third exceptions to the exclusion of evidence raise the question whether the appellants as the possessors or custodians of these spirits can be legally required to collect from the owners and pay to the proper officer, the tax due from the owners. The appellants' second, third and eighth prayers raise the same question at the close of the case, and it follows from what we have said that there was no error in overruling the demurrer, in excluding the testimony offered under the first, second and third exceptions to show that defendants were not the owners of the spirits, nor in the rejection of defendant's second, third, and eighth prayers; and for the same reason there was no error in granting the plaintiff's first prayer which embraces all the facts necessary to a recovery, assuming the law upon which the claim is based to be a valid enactment.

This suit was instituted July 11th, 1901, by Alfred Fowble, then Treasurer and Collector of Baltimore County, and the trial was had on February 5th, 1902. During the course of the trial the plaintiff proved that the term of Fowble had then expired, and that Willie B. Cochran had succeeded him as Treasurer and Collector. Thereupon the Court directed the declaration to be amended by striking out the name of Alfred Fowble, as Treasurer and Collector, and inserting the name of Willie B. Cochran—to which direction the defendant objected,

but the Court overruled the objection, and the amendment was made ; and this is the ground of the fourth exception.

Ordinarily an entirely new plaintiff cannot be made by amendment, but the local law of Baltimore County creating the office of Treasurer and Collector provides that "in all cases where a Treasurer and Collector has taken steps for the enforcement of the payment of said taxes either by notice, levy, advertisement, *or other proceedings* and his term of office shall expire before said proceedings are completed, the newly elected and qualified Treasurer and Collector is empowered and required to continue and complete said proceedings in the same manner as is now provided by law, and with all the power and authority had in law by the retired Treasurer and Collector during his term of office for that purpose." Under such a remedial statute every implication is to be made to accomplish its purpose, but in view of the emphatic and comprehensive language used here there is no room for implication, the authority being express. There was no error then in this ruling, nor in the rejection of defendant's first prayer which denied the right to recover because Fowble's term had expired.

The plaintiff's second prayer, and the defendants' fourth and fifth prayers, present opposing theories as to the validity of the levy made for the year 1900, by reason of the failure of the State Tax Commissioner to send to the County Commissioner his return of distilled spirits in defendants' warehouse, until February 28th, 1901.

Revenue statutes are to be construed liberally to carry out the purposes of their enactment ; (*U. S.* v. *Hodson*, 10 Wall. 395), and if we should hold this levy invalid for the reason assigned, we should by means of strict construction, permit the mere inadvertence of an independent department of government in making a return within due time, to paralyze the taxing power of the State, and we do not think this would be a proper construction under the circumstances of this case.

In *Hopkins* v. *Van Wyck*, 80 Md. 15, where the Baltimore City Code provided that the valuation of property as it stood

on the assessor's books on the first Monday of March, should be the basis upon which taxes for the ensuing year should be levied, but certain property of Mrs. Van Wyck was not placed on the books until May 12th, two days after levy for that year was made, and *in a suit like the present* by the Collector to recover taxes upon this particular property, it was held that "it was never designed by this provision to exempt from taxation for a current year the individual who by adroitness *or otherwise*, succeeded in eluding the vigilance of the assessors, or who by inadvertence was not rated with all his assessable property on the first Monday of March in that particular year." We can perceive no error in granting the plaintiff's second prayer, nor in rejecting the defendant's fourth and fifth prayers.

The evidence of John H. Carstairs, one of the defendants, is that on June 14th, 1901, the tax bill here sued on, July 11th, 1901, was received by defendants, but that "they thought the matter was done with because the law in Baltimore had been declared unconstitutional." The receipt of this bill was notice to them of the assessment, and the Act of 1898, ch. 275, gave a right of appeal therefrom. Had such appeal been taken, and had it resulted in declaring the assessment illegal, or erroneous, such judgment would have been pleadable in this suit and the facts set forth in defendant's sixth prayer could not therefore be a bar to recovery. *Fowble* v. *Kemp*, 92 Md. 630.

What we have said in reference to plaintiff's second prayer, and to defendant's fourth and fifth prayers, is applicable to defendant's seventh prayer which was properly rejected.

Finding no error in any of the rulings, the judgment of the Circuit Court for Baltimore County will be affirmed.

*Judgment affirmed with cost above and below.*

(Decided June 19th, 1902.)