## John Ross & Company v. Board of Supervisors of Daviess County, etc.

(Decided January 23, 1920.)

### Appeal from Daviess Circuit Court.

1. Taxation—Taxable Situs of Personal Property—Temporary Situs. —Under section 4025 of the Kentucky Statutes, providing that tangible personal property shall be listed for assessment where it has established a taxable situs based on the actual situation of the property, personal property temporarily in a county is not subject to assessment there.

2. Taxation—Situs of Personal Property for Assessment When Temporarily Located.—Property to be exempt on the ground that it is only temporarily at the place where it is sought to be as-

sessed must be property that is merely passing through the place or that is located temporarily there because of some temporary obstruction that prevents its movement to the place of its destination, or property that has been assessed for the year at some other place.

3. Taxation—Exemption of Personal Property From—Presumption Against.—Before a party can rightfully claim an exemption from taxation he must affirmatively show that the exemption claimed is authorized by law. If there be a doubt on the subject that doubt must be resolved in favor of the state.

4. Taxation—Situs of Personal Property for—Intention of Owner in Respect to Its Situs Not Controlling.—Where it is claimed that property that was assessed was only temporarily at the place of assessment the intention of the owner in respect to the disposition he would make of the property or his purpose in having it at the place where it was assessed will not be controlling factors in determining whether it is entitled to exemption.

5. Taxation—Exemption of Personal Property—Location for Temporary Purposes.—Where tobacco bought in the fall and spring of 1916 and 1917 for shipment to England was stored after its purchase in a warehouse for the purpose of grading, redrying, assorting and prizing it preparatory to shipment, and in consequence of a lack of shipping facilities it was in the warehouse on September 1, 1917, it had acquired a situs for taxation on that day and at that place.

W. P. SANDIDGE for appellant.

H. A. BIRKHEAD for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL— Affirming.

The only question in this case is whether a lot of tobacco owned by John Ross, doing business under the name of John Ross and Company, was subject to assessment for taxation in Daviess county on the assessing date, September 1, 1917. The circuit court on the appeal of John Ross and Company to that court ruled that the tobacco was subject to assessment for taxation and this appeal is prosecuted from that ruling.

The sum in controversy in this case is not large but in view of the great quantities of tobacco grown in this state and that is stored on assessing dates in many cities, towns and other places in the state for the purpose of preparing it for market and then shipping it to other places in or out of the state for manufacture or sale, the question involved takes on an importance greater than the mere amount involved, and this added circumstance has caused us to give to it a very careful consideration. ·

The case was tried in the lower court and comes here on the following agreed stipulation of fact:

"That on the 1st day of September, 1917, John Ross, doing business as John Ross & Company, was the owner of tobacco prized in hogsheads and stored in warehouses in Owensboro, Kentucky, of the fair, reasonable value of $92,400.00; that John Ross was the only member of said concern, John Ross & Company, and the only person interested in said tobacco; that said John Ross was at said time and has been all of his life, and still is, a resident and citizen of Liverpool, England; that he had purchased said tobacco in Owensboro, Kentucky, during the preceding tobacco season which began on the 1st day of November, 1916, and ended on the 1st day of May, 1917; that he purchased said tobacco in order to deliver the same to certain tobacco merchants in England in compliance with contracts which he had previously made to supply them with certain grades and quantities of tobacco; that he had said tobacco handled in Owensboro; that "handling" is a commercial term and means grading, redrying, assorting and prizing; that it was the intention of said Ross to ship said tobacco to England immediately after the same had been handled, but that owing to the existing shortage in ocean shipping facilities he was unable to do this and stored the same in warehouses aforesaid awaiting the time when he could secure sufficient shipping facilities to transport the same to England; that he has been constantly shipping the same in such lots as he could secure facilities for since the same was stored in said warehouses; that part of the tobacco so purchased and stored was shipped before the 1st day of September, 1917; that the amount in said warehouses in Owensboro on said date was worth $92,400.00; that since said date he has been shipping the same out as fast as it was possible for him to secure shipping facilities; that he did not have said tobacco in said warehouses in Owensboro for the purpose of selling same in Owensboro, nor for the purpose of using the same in business in Owensboro, but had the same simply awaiting shipment as above mentioned. It is agreed, however, that the title to said tobacco was in said Ross, and that during the same time he sold one lot of said tobacco to other parties while the same was stored in said warehouses. It is further agreed that a portion of said tobacco remained in said warehouses in Owensboro as late as April or May. 1918, before it was finally shipped out."

The controlling statute law is found in section 4025 of the Kentucky Statutes, which provides that "Tangible personal property shall be listed and taxes paid thereon in the county, municipality and taxing district where the same has established a taxable situs based on the actual situation of the property." This statute was the subject of construction in Hill v. Caldwell, 134 Ky. 99: In that case a drove of cattle owned by Caldwell were assessed for taxation in Lincoln county in September, 1918, and when the sheriff sought to collect the taxes Hill brought suit to enjoin the collection. The petition of Hill, to which a demurrer was sustained, alleged that he lived in Boyle county and that the cattle had been taken from his farm in Boyle county, where he had assessed them for taxation, on that assessing date, to Lincoln county for the purpose of there temporarily grazing them, and they had no taxable situs in that county.

The court, after quoting the section of the statute referred to, said:

"This language certainly does not mean that property which is only temporarily in a county other than the residence of the owner is taxable when it is found on assessment day. If this had been the meaning of the legislature, it would not have been necessary to use the language we find in the statute. It would only have been necessary to say that tangible personal property should be taxed at that place where it is actually situated on assessment day of the given year. The language used by the legislature is applicable to that class of tangible personal property which is permanently situated in a county other than the owner's residence. We are unable to reach the conclusion that the legislature meant that if the owner of cattle living near a county line should rent a pasture in the county adjoining, and there for a few weeks should pasture his cattle, these would be taxable where they were temporarily grazing, if they happened to remain there until assessment day.

"We are of the opinion that appellee's cattle were not taxable in Lincoln county under the facts as stated in the petition."

In the City of Paris v. Burley Tobacco Society, 154 Ky. 320, the question was whether certain tobacco owned by the society and stored in warehouses in the city of Paris was subject to assessment and taxation by the city. In that case the court, after referring to the section of

the statute and the case of Hill v. Caldwell, said in remanding the case for preparation so that it might be determined whether the tobacco had a taxable situs in the city of Paris, that "Under this statute, if the taxes on this tobacco had not been paid by the growers, and if it has a taxable situs based on the actual situation of the property in the city of Paris, it is subject to taxation there for the years in which it had a taxable situs in the city. We may further add that if this tobacco was only in the possession of the corporations in the city of Paris temporarily or for a temporary purpose, it was not subject to taxation in the city."

These cases are referred to and relied on by counsel for John Ross and Company but do not furnish us much assistance because in the Hill case the cattle sought to be assessed in Lincoln county had been listed for assessment for the year in Boyle county where the owner lived, and they were only in Lincoln county for temporary grazing purposes. In the city of Paris case the court simply approved what was said in the Hill case and so the question again recurs—should this tobacco under the facts set out in the agreed stipulation be treated as in Owensboro on the assessing date for mere temporary purposes within the meaning of the statute or had it on that date a taxable situs in Owensboro based on the actual situation of the property?

It is familiar law that the burden is on the party claiming exemption from taxation to clearly establish that he is entitled to it. No presumption will be indulged in his favor. On the contrary the presumption is that all tangible personal property in the state on the assessing date is subject to assessment at the place where it has an actual situs. As said in Jones, etc. v. City of Louisville, 142 Ky. 759, "The right of taxation is never presumed to be relinquished, and before any party can rightly claim an exemption from the common burden, it is incumbent upon the party to show affirmatively that the exemption claimed is authorized by law. If there be a doubt upon the subject, that doubt must be resolved in favor of the State, and it is only where the exemption is shown to be granted in terms clear and unequivocal, that the right of exemption can be maintained."

It is agreed that on the assessing date the tobacco had a physical situs in Daviess county, but notwithstanding this, if it was there for some mere temporary purpose,

although it may have had while there, for such purpose, the protection of the laws of the state, it would yet be exempt from taxation under the authority of the cases cited; but the words "temporary purposes" and the word "temporary" as applied to property for which an exemption from taxation is sought, must, as we think, be property that is, for example, passing through a place, or that is located for a time in a place through which it is being carried because of some temporary obstruction that prevents its immediate movement to the place of destination; or is property that is for any reason tempo· rarily located at some place in this state where it is not intended it shall remain longer than may be necessary to subject it to some treatment preparatory to its removal to another place, and which has been assessed for the year at some other place in this state.

These few illustrations are not of course intended to describe all the circumstances that will be allowed to exempt from assessment and taxation property temporarily located in a particular place, as it would be impossible to set down all the exceptions that might arise entitling property to exemption. Each case must in a large measure stand on its own facts.

It is obvious, however, that the tobacco assessed in this case should not be held to be exempt; a ruling like this would virtually authorize the exemption of all property under all circumstances if it happened on the assessing date to be located at some place from which the owner intended to remove it when it suited his convenience or interest to do so, or when he could obtain shipping facilities, or when he had put it in condition for the use to which it was ultimately to be put, or prepared it for sale on the market, although it had not been assessed at any other place in this state and had been at all times within the state.

It is also plain that if this tobacco, which had not been assessed at any other place, should not be subjected to assessment and taxation in Daviess county it would escape taxation in this state entirely, although for many months it had enjoyed the protection afforded by the laws of this state.

It is argued, however, that the stipulation of fact, which we accept as correctly stating the facts, shows that the tobacco had been purchased by Ross and Company with the intention of shipping it to England in fulfill-

ment of contracts made to deliver it to merchants there, and that as its shipment was delayed only for the reason before set out it must follow that it was only temporarily in Owensboro. But this argument overlooks or attaches no importance to the further fact that the tobacco in storage at the assessing date of September 1, 1917, had been purchased on the market in Owensboro between October 1, 1916, and May 1, 1917, and removed at the time of purchase to the warehouse in which it was stored on September 1, 1917, for the purpose of grading, redrying, assorting and prizing it and it was after this process had been completed that its shipment was delayed for want of facilities.

We do not, however, mean to hold that it would not have been subject to assessment if it appeared that it had been stored in the warehouse without any intention of rehandling and only to await shipping facilities that were not obtainable when it was put in storage. We think, no matter for what purpose it was put in the warehouse or kept there, if it was there on the assessing date it had established at that place a "taxable situs based on the actual situation of the property."

This tobacco was not in transit as an interstate shipment. It was grown in this state, was purchased by John Ross and Company on the market at Owensboro in Daviess county and it was in that county on the assessing date. Under these circumstances it is not a material inquiry why it was there on that date. Neither does the argument give any importance to the fact that Ross and Company could have changed their intention and disposed of the whole of the tobacco in Owensboro, at which place they did sell a part of it. We refer to these circumstances merely for the purpose of illustrating that the intention of the owner as to the disposition he expects to make of the property sought to be assessed or his purpose in having it at the place where it was assessed will not be controlling factors in determining whether it is entitled to exemption, although they are circumstances to be considered in disposing of the question of its assessability which must ultimately depend on whether the property "has established a taxable situs based on the actual situation of the property" at the place it is assessed.

In this connection the opinion in Ayer & Lord Tie Co. v. Keown, Sheriff, 122 Ky. 580, although dealing with a

different state of facts arising under another statute may be pertinently referred to as illustrating the strictness with which courts rule that tangible personal property in the state on assessing day is subject to assessment at the place where it is located. In that case suit was brought to enjoin the collection of taxes assessed against railroad ties that were located in Ohio county. Exemption from taxation was claimed upon the ground that the ties which had been manufactured from standing timber "had been taken from the woods and placed in the hands of a common carrier for the purpose of immediately shipping them out of the county, and were on September 15, 1903, on their way to foreign ports; that as many of them as were on said date within the limits of Ohio county were checked only temporarily on their journey from the woods to foreign states, for the purpose of being loaded on barges, on which they were to be, and on which they have long since been, carried to their place of destination outside of Ohio county, Ky., towards which points they had already started and were moving at the time of the taxation as above referred to; that as a matter of fact all of said ties at said date had been contracted to foreign companies, persons, and corporations and were in process of delivery."

The court then quoted with approval the following from the case of Coe v. Errol, 116 U. S. 517, 29 Law Ed. 715: "When the products of the farm or forest are collected and brought in from the surrounding country to a town or station serving as an entrepot for that particular region, whether on a river or line of railroad, such products are not yet exported, nor are they yet in process of exportation, nor is exportation begun until they have been committed to the common carrier for transportation out of their state to the state of their destination, or have started on an ultimate passage to that state. Until then it is reasonable to regard them as not only in the state of their origin, but as a part of the general mass of property of that state, subject to its jurisdiction and liable to taxation. The point of time when state jurisdiction over the commodities of commerce begins and ends is not an easy matter to designate or define, yet it is highly important both to the shipper and to the state that it should be clearly defined so as to avoid all ambiguity and question. Whenever a commodity has begun to move as an article of trade from one state to another, commerce in

that commodity, as between the states, has commenced; but this movement does not begin until the articles have been shipped or started for transportation from one state to the other. The carrying of them in carts or vehicles, or even floating them, to the depot where the journey is to commence, is no part of their journey. That is all preliminary work, performed for the purpose of putting the property in a state of preparation and readiness for transportation. Until actually launched on its way to another state, or committed to a carrier for transportation to such state, its destination is not fixed and certain. It may be sold or otherwise disposed of within the state, and never put in course of transportation out of the state. Carrying it from the farm or forest to the depot is only an interior movement of the property, entirely within the state, for the purpose, it is true, but only for the purpose of putting it in a course of exportation. It is no part of the exportation itself. Until shipped or started on its final journey out of the state its exportation is a matter altogether *in fieri,* and not at all a fixed and certain thing.''

Other illustrative cases are: American Steel & Wire Co. v. Speed, 192 U. S. 500, 48 Law Ed. 538; Kelly v. Rhoads, 188 U. S. 1, 47 Law Ed. 359; Diamond Match Co. v. Ontonagon, 188 U. S. 82, 47 Law Ed. 394; State of Minnesota v. Taber Lumber Co. 101 Minn. 186, 13 L. R. A. (N. S.) 800; Lehigh & Wilkes-Barre Coal Co. v. Borough of Junction, 75 N. J. 68, 922, 15 L. R. A. (N. S.) 514; Merchants Transfer Co. v. Board of Review, 128 Iowa 732, 2 L. R. A. (N. S.) 662; Meyers v. Baltimore Co., Comrs., 83 Md. 385, 34 L. R. A. 309; Burlington Lumber Co. v. Willets, 118 Ill. 559.

It would further seem to follow from the adoption of the rule of exemption claimed by counsel that all the property in storage in public warehouses in the state would be exempt from assessment at the place in which it was stored, if it was stored for temporary purposes, as we may assume the great bulk of it is, although it might remain in such warehouses for a year or more and during that period not be assessed at any other place in the state, and yet it would hardly be contended that property on storage in public warehouses at assessing dates and that had not been assessed at any other place in this state should not have a situs for assessment and taxation in the place where the warehouse was located

unless there were exceptional circumstances that exempted it. Com. v. Gaines & Co., 80 Ky. 489.

Under the facts we are clearly of the opinion that this tobacco had, within the meaning of the statute, "established a taxable situs" in Daviess county "based on the actual situation of the property" in that county.

Wherefore the judgment is affirmed.